**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-30844

MARINECHANCE SHIPPING, LTD.,

Plaintiff-Appellee,

VERSUS

FERNANDO SEBASTIAN; RAUL GALEDO,

Defendants-Appellants.

Appeal from the United States District Court
For the Eastern District of Louisiana

June 22, 1998

Before WISDOM, HIGGINBOTHAM, and JONES, Circuit Judges.

WISDOM, Senior Circuit Judge:

Fernando Sebastian and Raul Galedo ("the seamen") filed this admiralty suit against Marinechance Shipping Ltd. (Marinechance) seeking damages for injuries incurred while aboard the M/V ELLISPONTOS. In a carefully reasoned and well-researched decision, district Judge Feldman granted Marinechance's motion for a partial summary declaratory judgment, finding that the forum selection clauses in the seamen's contracts required their causes of action to be filed in the Republic of the Philippines. We affirm.

I.

The seamen, both citizens of the Philippines, were injured in an accident aboard the M/V ELLISPONTOS while in the navigable waters of the Mississippi River near Burnside, Louisiana. They were transported to a hospital in Baton Rouge for treatment.

The M/V ELLISPONTOS is owned by Marinechance, a corporation with its principal place of business in Nicosia, Cyprus. Marinechance filed this suit in the federal district court[1] seeking a declaratory judgment that any litigation arising from the accident must proceed, if at all, in the courts of the Philippines under the law of the Philippines. Marinechance also sought to limit its liability under the Limitation of Liability Act.[2] The district court enjoined the seamen from filing suit in the Louisiana state courts.

The seamen filed a motion to dismiss Marinechance's declaratory action and to lift the stay of proceedings. A few months later, before the district court ruled upon the seamen's motion, Marinechance filed a motion for partial summary judgment on the declaratory action. The district court granted a partial summary judgment in favor of Marinechance, finding that the forum selection clauses in the seamen's contract and the relevant laws and treaties required this suit to be maintained in the Philippine courts. The district court did not rule upon the seamen's motions.

The seamen appeal. This Court has jurisdiction to hear the seamen's appeal from the declaratory judgment under 28 U.S.C. § 1292(a)(3). The seamen's appeal from the refusal to lift the stay of proceedings is a different matter, however. Although this court has jurisdiction to hear appeals from the continuance or granting of an injunction under 28 U.S.C. § 1292(a)(1), the district court did not do either; it declined to decide the issue until the parties submitted a new motion and briefs on the status of the issue after the court's ruling on the declaratory judgment. Recognizing this problem, the seamen request that this Court treat their brief as a petition for a writ of mandamus on this issue.

II.

First, the seamen argue that the district court was required to lift the automatic stay of proceedings under the Limitation of Liability Act because they entered into the following stipulations: (1) they would not seek damages in excess of the limitation amount, (2) they agreed not to challenge

---

[1] Marinechance invoked the district court's general admiralty jurisdiction, 28 U.S.C. § 1331 (1).

[2] 46 U.S.C. § 181, et seq.

2

Marinechance's right to have the federal court determine the issue of exoneration or limitations of damages after the state-court trial on the merits, and (3) they agreed to waive any claim of *res judicata* arising from the state court proceedings on the issue of limited liability. In *Texaco v. Williams*, this Court found that a stay of proceedings should be lifted so that the claimants may assert their actions in state court under the Savings to Suitors Clause of 28 U.S.C. § 1333 if these stipulations are made.[3] The seamen's stipulations were identical with those in *Texaco*.

Instead of ruling upon the seamen's motion to lift the stay, the district court entered a declaratory judgment in favor of Marinechance, finding that this suit must proceed, if at all, in the Philippines. The district court noted that the parties should file a new motion and briefs on the effect of the declaratory judgment on their request to lift the stay. In effect, however, the declaratory judgment mooted the motion to lift the stay. The seamen argue that the district court's declaratory judgment should be reversed and the district court should be compelled to lift the stay of proceedings so that this action can be maintained in the Louisiana courts. They argue that any issue of choice of laws or choice of forum may be addressed fully in the state court. Marinechance maintains that the district court merely exercised its discretion to control its docket by deciding an issue that was dispositive of the case before reaching any other issues.

This Court will grant a writ of mandamus only when there is a "usurpation of judicial power" or a clear abuse of discretion.[4] In this case, the district court did not clearly abuse its discretion. The district court possesses the inherent power to control its docket.[5] This power includes the authority to decide the order in which to hear and decide pending issues.[6] The district court used its

---

[3] *Texaco v. Williams*, 47 F.3d 765, 767-9 (5th Cir. 1995).

[4] *In re Stone*, 986 F.2d 898, 901 (5th Cir. 1993).

[5] *See Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *United States Abatement Corp. v. Mobil Exploration & Producing U.S., Inc.*, 39 F.3d 556, 559 (5th Cir. 1994).

[6] *United States Abatement Corp.*, 39 F.3d 556 at 559.

3

discretionary authority to handle this case in the most efficient way; the court ruled upon the potentially dispositive issue first.

## III.

The seamen also argue that the district court erred in granting a declaratory judgment because Marinechance filed its declaratory action in anticipation of a suit in state court. They maintain that this is a type of forum shopping condemned by this Court. Marinechance argues that the district court properly exercised its discretion to grant declaratory relief.

A district court's decision to grant or to deny declaratory relief is reviewed for abuse of discretion.[7] In *Rowan Companies v. Griffin*, this Court listed several factors to consider when deciding whether to grant declaratory relief.

> For example, declaratory relief may be denied because of a pending state court proceeding in which the matters in controversy between the parties may be fully litigated, because the declaratory complaint was filed in anticipation of another suit and is being used for the purpose of forum shopping, because of possible inequities in permitting the plaintiff to gain precedence in time and forum, or because of inconvenience to the parties or the witnesses.[8]

The second situation listed is most applicable to this suit. Without question, Marinechance filed this declaratory action in anticipation of the seamen's suit in the state courts. The question is whether Marinechance was engaged in forum shopping. The district court found that it was not. Marinechance was not attempting to litigate its claims in federal court instead of state court, nor was it trying to obtain a bench trial instead of a jury trial. Rather, Marinechance was seeking to enforce its choice of forum provisions requiring the suit to be pursued in the Philippines. This declaratory action was the most efficient means of invoking its rights under the contract.

The seamen argue that this result destroys the policies underlying the savings to suitors clause because it deprives the seamen of their choice of a state court forum. Rule 57 of the Federal Rules of Civil Procedure expressly states that the availability of an alternative remedy does not prevent the

---

[7]    *Rowan Companies v. Griffin*, 876 F.2d 26, 29 (5th Cir. 1989).

[8]    *Id* (internal citations omitted).

district court from granting a declaratory judgment. Even if the seamen were able to bring this action in the state court, the Louisiana Supreme Court's decision in *Lejano v. K.S. BANDAK* shows that the same result would follow because the court would apply federal law to determine the validity of the choice of forum provisions.[9] The seamen were not denied the traditional benefits of the savings to suitors clause.[10] The district court did not abuse its discretion, then, by granting declaratory relief. Instead, the district court's decision ensured that Marinechance's rights were protected at the earliest possible time. This is the primary goal of declaratory action.[11]

IV.

Finally, the seamen argue that the district court erred in granting a partial summary judgment enforcing the forum selection clauses in the seamen's employment contracts. The seamen were employed under a contract (the Employment Contract) approved by the Philippine Overseas Employment Administration (POEA)[12]. That contract provides that:

> All claims, complaints or controversies relative to the implementation and interpretation of this overseas employment contract shall be exclusively resolved through the established grievance machinery in the Revised Employment Contract for

---

[9]    705 So.2d 158 (La. 1997).

[10]    The seamen were not being deprived of a jury trial on this issue either. Whether the choice of laws provisions in the seamen's contracts are enforceable is determined by the court as a matter of law. The seamen could not obtain a jury trial on this issue in either federal or state court.

[11]    "The remedy made available by the Declaratory Judgment Act and Rule 57 is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action[.]" Wright, Miller, & Kane, Federal Practice and Procedure: Civil 3d. § 2751 (1998).

[12]    The Philippine Overseas Employment Administration is a government organization created to:

> a. promote and develop overseas employment opportunities in cooperation with relevant government institutions and the private sector; b. establish the environment conducive to the continued operations of legitimate and responsible private agents; and c. afford protection to Filipino workers and their families, promote their interests and safeguard their welfare. To effectuate these policy goals, the POEA regulates principals and projects, recruitment, advertisement and placement; contract processing and travel documentation; employment standards; the filing of grievances; and provides worker assistance and welfare services.

*Cruz v. Chesapeake Shipping, Inc.*, 738 F.Supp. 809, 815 (D.Del 1990), *aff'd* 932 F.2d 218, 221 (3d Cir. 1991) (citations omitted). The POEA has been replaced by the Philippines National Labor Relations Council.

Seafarers, the adjudication procedures of Philippine Overseas Employment Administration and the Philippine Courts of Justice, in that order.

The Employment Contract also states that: "[t]he terms and conditions of the revised Employment Contract for seafarers governing the employment of Filipino seafarers approved by the POEA . . . shall be strictly and faithfully observed." The Revised Employment Contract for Seafarers (the Revised Contract) includes the following provisions:

Section 28 - Jurisdiction

The Philippine Overseas Employment Administration (POEA) or the National Labor Relations Commission (NLRC) shall have original and exclusive jurisdiction over any and all disputes or controversies arising out of or by virtue of this Contract . . .

Section 29 - Applicable Law

All rights and obligations of the parties to this Contract, including the annexes thereof, shall be governed by the laws of the Republic of the Philippines, International Conventions, Treaties and covenants where the Philippines is a signatory.

The Revised Contract incorporates the Migrant Workers' and Overseas Filipinos' Act of 1995 which grants the Labor Arbiters of the NLRC in the Philippines the exclusive jurisdiction to hear "the claims arising out of an employer-employee relationship or by virtue of any law or contract involving Philippine workers for overseas employment including claims for actual, moral, exemplary and other forms of damages." The Revised Contract also incorporates the treaty between the Republic of the Philippines and the Republic of Cyprus regarding the employment of Philippine and Cypriot seamen which states:

Any disputes arising out of the respective contract of employment between a ship owner of one Contracting Party and a seaman of the other Contracting Party shall be referred for settlement solely to the exclusive jurisdiction of the competent Courts or Authorities, as the case may be, in the country of the seaman's nationality where the contract of employment was signed and approved.

Each of these provisions points to resolution of the seamen's dispute with Marinechance in the Philippines. The two questions that this Court must address are (1) whether these forum selection

clauses are valid and (2) whether they cover causes of action sounding in tort. To answer these questions, we apply federal maritime law.[13]

A.

In *M/S BREMEN v. Zapata Off-Shore*, the Supreme Court held that forum selection clauses in admiralty cases are presumptively valid and enforceable.[14] Forum selection clauses are important in international cases such as the instant case because there is much uncertainty regarding the resolution of disputes. Ocean-going vessels travel through many jurisdictions, and could become subject to the laws of a particular jurisdiction based solely upon the fortuitous event of an accident. "The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting."[15] To overcome the presumption that the forum selection clause is enforceable, the party challenging the clause must make a "strong showing" that the clause is unreasonable.[16]

The Supreme Court refined its analysis of forum selection clauses in *Carnival Cruise Lines, Inc. v. Shute*.[17] This time, the Court faced a slip and fall negligence action brought by a passenger aboard Carnival Cruise Lines's ship, TROPICALE. The ticket authorizing passage aboard the ship contained a clause requiring all disputed cases to be filed in the state of Florida. The passenger filed suit in the state of Washington. Carnival Cruise Lines asserted the forum selection clause as a

---

[13] *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991); *Lejano v. K.S. BANDAK*, 705 So.2d 158, 166 (La. 1997).

[14] 407 U.S. 1, 11 (1972). The position accepted by the *BREMEN* Court mirrors that articulated by the American Law Institute. "The parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but such an agreement will be given effect unless it is unfair or unreasonable." Restatement (Second) of Conflict of Laws § 80.

[15] 407 U.S.. at 13-4.

[16] *Id*. at 15. Justice Kennedy summarized the strong presumption in favor of the enforceability of forum selection clauses as follows: "a valid forum selection clause is given controlling weight in all but the most exceptional cases." *Stewart Organization v. Ricoh Corp.*, 101 L.Ed.2d 22, 34 (1988) (Kennedy, J., concurring).

[17] 499 U.S. 585 (1991).

defense. The passenger attacked the clause because it was not the product of negotiation and tended to deprive the passenger of her day in court.[18] The Court rejected these arguments. Even though the passenger did not[19] and could not bargain for this forum selection clause due to a lack of bargaining power, the Court held that forum selection clauses in routine contracts of passage are enforceable so long as they are reasonable.[20] This type of clause is "subject to judicial scrutiny for fundamental fairness".[21] This clause limited Carnival Cruise Lines exposure to suits in multiple forums, eliminated passenger's confusion about where to file suit against Carnival Cruise Lines, and tended to reduce ticket prices.[22] Therefore, this clause was reasonable and enforceable.[23]

The similarities between the present case and *Carnival Cruise Lines* are many. The contracts of employment for seamen aboard international vessels are routine; the seaman individually do not have much bargaining power. The selection of a forum in advance reduces the vessel owner's exposure to suits in forums all over the world. Furthermore, it informs the seamen of where their causes of action can be maintained. Where this case departs from *Carnival Cruise Lines* is that the forum selection clause was imposed by an arm of the Philippine government rather than by either

---

[18]   *Id*. at 590.

[19]   The passenger entered into a contract with Carnival Cruise Lines by paying for the cruise by check well before seeing the ticket containing the forum selection clause. *Id*. at 587-8.

[20]   *Id*. at 593.

[21]   *Id*. at 595.

[22]   *Id*. at 593-4.

[23]   *Id*.

party.[24] This distinction does not alter the fact that the forum selection clause is fundamentally fair.[25]

We find, then, that the forum selection clauses in the seamen's contracts are enforceable.[26]

B.

The seamen argue that the forum selection clauses in their contract do not apply to the seamen's tort causes of action. The district court did not expressly consider this contract / tort distinction that the seamen attempt to draw. We find no persuasive support for such a general distinction.[27] Instead, we must look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clauses.

---

[24] This clause was included under the POEA's authority to protect Philippine seamen. Nevertheless, the vessel owner, who was forced to accept this provision before hiring a Philippine seaman, may rely upon that provision. Nothing in the Revised Contract make its provisions enforceable at the whim of the seaman.

[25] The effect of POEA intervention in employment contracts is to shift the balance of power slightly in favor of the employee in much the same way that a labor union or legislative enactment of minimum work standards increases the level of protection for employees in the United States.

The seamen argue that this case is controlled by our decision in *Randall v. Arabian Amer. Oil Co*, 778 F.2d 1146 (5th Cir. 1985). In *Randall*, we held that a district court was not deprived of jurisdiction over a case by a foreign country's law calling for exclusive jurisdiction in its courts. *Id*. at 1150. The present case is not similar to *Randall*. Although the forum selection clause at issue here is the result of governmental intervention in the Philippines, that clause is part of the contract agreed to by the parties. The forum selection clause here is contractual, not legislative.

[26] In *Cuizon v. Kedma, Ltd.*, the District Court for the Southern District of New York found that a similar POEA forum selection clause was unenforceable because it was a contract of adhesion. 1997 WL 37938, *5-*6 (S.D.N.Y. 1997) We respectfully disagree with that decision. The *Cuizon* court focused almost exclusively on the fact that the parties could not negotiate for this provision; it did not conduct an inquiry for fundamental fairness This ignores the Supreme Court's decision in *Carnival Cruise Lines v. Shute*.

[27] Although the Supreme Court did not discuss a contract / tort distinction in *Carnival Cruise Lines v. Shute*, the Court rejected, by necessary implication, an across-the-board differentiation between contract and tort causes of action when enforcing forum selection clauses. *Carnival Cruise Lines* was purely a tort (slip and fall) case. 499 U.S. at 588. The Court applied the forum selection clause contained in the parties' contract to this cause of action.

In *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir. 1983), the United States Court of Appeals for the Third Circuit rejected a contract / tort distinction. In doing so, it acknowledged that the policies justifying application of forum selection clauses in contract cases are equally applicable to tort causes of action arising out of that contractual relationship. *Id.* at 203. Any contrary conclusion would allow a forum selection clause to be defeated by "artful pleading". *Id*. This points to an additional problem with a contract / tort distinction, these causes of action tend to blur together. *See e.g., M/S BREMEN v. Zapata Off-Shore*, 407 U.S. 1 (1972), in which the same events gave rise to both negligence and breach of contract actions.

9

Here, we have two forum selection clauses upon which the parties place their primary reliance. The seamen direct our attention to the Employment Contract's language establishing the Philippines as the exclusive forum for disputes regarding the "implementation and interpretation of this overseas employment contract". They maintain that this language covers contract claims only. Marinechance relies primarily upon the Revised Contract which makes the Philippines the exclusive jurisdiction for "any and all disputes or controversies arising out of or by virtue of this Contract". Marinechance argues that this includes tort causes of action.

For present purposes, we will assume that the seamen are correct and that the forum selection clause of the Employment Contract does not include tort causes of action.[28] We find, however, that the forum selection clause of the Revised Contract is the provision governing the appropriate forum for tort actions. The employment contract expressly incorporates the Revised Contract; it states that the terms of the Revised Contract shall be "strictly and faithfully observed". Because there is nothing in the Employment Contract to displace or modify the forum selection clause of the Revised Contract, other than the clause that the seamen admit does not apply to tort causes of action, we find that the language of the Revised Contract is controlling.

Several courts have considered forum selection language similar to that of the Revised Contract and have concluded that the forum selection clauses applied to tort causes of action. Examples of these include: *Carnival Cruise Lines, Inc. v. Shute*,[29] in which the Supreme Court found that "all disputes and matters whatsoever arising under, in connection with or incident to this Contract" included a negligence (slip and fall) cause of action; and *Lejano v. K.S. BANDAK*,[30] in which the Louisiana Supreme Court found that a forum selection clauses encompassing all "[c]ases concerning the seafarer's service on the ship" included tort causes of action. This interpretation has

---

[28]    The district court in *Cuizon v. Kedma, Ltd*, considered this language in a similar case involving Philippine seamen and concluded that it did not cover tort causes of action. 1997 WL 37938, *2 (S.D.N.Y. 1997).

[29]    499 U.S. 585, 587-8 (1991).

[30]    705 So.2d 158 (La. 1997).

not been universal, however. In *Hodge v. Ocean Quest Int'l, Ltd*, a district court interpreted an employment contract forum selection clause stating that "[n]o claim, demand, action, proceeding, arbitration, litigation, hearing, motion, or lawsuit, arising herefrom or with respect hereto shall commence or be prosecuted in any jurisdiction other than the Cayman Islands" not to apply to the employee's tort cause of action against her employer.[31] That court rested its decision squarely upon the contract / tort distinction.[32] We find that the decisions of the United States Supreme Court and the Louisiana Supreme Court are more persuasive. There is nothing in these clauses that justifies limiting their application to contract claims. "[A]ny and all disputes or controversies arising out of or by virtue of this Contract" includes tort causes of action arising during the course of employment between the seamen and Marinechance. The district court did not err in enforcing the forum selection clause in this suit.[33]

V.

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

[31]    1992 WL 162609, *3 (E.D. La. 1992).

[32]    *Id.*

[33]    Our conclusion is bolstered by the fact that the Revised Contract provides for benefits and compensation to injured seamen.

11