Nikolas PSARROS, Plaintiff,

v.

AVIOR SHIPPING, INC., Overseas Shipping Co., Ltd., Makri Shipping Company, Inc., International Marine Supplies, Inc. and Universal Maritime Service Corp., Defendants.

No. CIV.A. G–01–284.

United States District Court,
S.D. Texas,
Galveston Division.

March 29, 2002.

Jerry M Young, Steidley Kim Law Firm, Houston, TX, for plaintiff.

Ronald L White, White Mackillop et al, Houston, TX, for defendants.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS

KENT, District Judge.

Now before this Court is a Motion to Dismiss filed by Defendants Makri Shipping Company, Inc. ("Makri"), Overseas Shipping Company, Ltd. ("Overseas") and Avior Shipping, Inc. ("Avior") on February 13, 2002. In their Motion, Makri, Avior and Overseas (collectively "Shipping Defendants") seek dismissal of all claims brought against them by Plaintiff Nikolas Psarros pursuant to a Greek Forum Selection Clause or, in the alternative, pursuant to the doctrine of *forum non conveniens.* For the reasons articulated below, the Shipping Defendants' Motion is hereby **DENIED**.

### I.

The facts averred by Plaintiff can be summarized concisely. Plaintiff, a resident and citizen of Greece, was employed by Avior, a New York corporation, and/or Makri, a Panamanian corporation, as a third mate aboard the M/V EIRINI.[1] At all times relevant to this lawsuit, the M/V EIRINI was a Panama flag vessel owned by Makri and operated by Overseas, a Panamanian corporation. On May 8, 2000, while the M/V EIRINI was docking in the Port of Houston, Texas, a line securing the vessel snapped, recoiled inward and struck Plaintiff's left leg, causing a partial amputation. Plaintiff was subsequently hospitalized in Houston for twelve days and underwent multiple surgeries before returning to Greece over three months later. The line rope that swept Plaintiff's leg had been purchased by Avior from Defendant International Marine Supplies, Inc. ("IMS"), a Texas corporation, and/or Defendant Universal Maritime Service Corporation ("UMS"), a New York corporation.

Plaintiff's First Amended Complaint, filed March 26, 2002, asserts seven causes of action against the various Defendants: (1) Jones Act negligence; (2) unseaworthiness; (3) maintenance and cure; (4) general maritime negligence; (5) gross negligence; (6) products liability; and (7) breach of warranty. The Shipping Defendants' Motion to Dismiss argues that all causes of action asserted against them must be dismissed pursuant to Fed. R.Civ.P. 12(b)(3) on the basis of a forum selection clause contained in the Merchant Marine Employment Agreement ("MME Agreement") executed by Plaintiff and Overseas on January 15, 2000.[2] That clause expressly states that "[i]t is mandatory that any disagreement arising from the enforcement of this contract will be resolved in the Greek Courts, explicitly excluding the Seaman from seeking recourse in the Courts of the U.S.A. or in the Courts of any other country besides Greece." In the alternative, the Shipping Defendants seek dismissal of this action on *forum non conveniens* grounds. The

---

**1.** The Court notes that, although Plaintiff avers that he was employed by Avior and/or Makri, Defendants aver that Plaintiff was employed by Overseas. Moreover, Defendants aver that Avior was merely a facilitating agent for Overseas with no direct involvement in any matters giving rise to this lawsuit. Upon inspection of the relevant evidence, the Court finds Defendants' assertion as more plausible.

However, at the Motion to Dismiss stage, the Court must view Plaintiff's allegations as true. Thus, the Court will assume that Plaintiff was employed by Avior and/or Makri for purposes of reviewing the instant Motion.

**2.** The MME Agreement was written entirely in Greek.

Court will address each of these contentions in turn.

## II.

 Title 28, United States Code § 1406(a) instructs District Courts to dismiss or transfer a case if venue is improper where filed.[3] A party may move to dismiss an action based on improper venue pursuant to Fed.R.Civ.P. 12(b)(3). Once a defendant raises the issue of proper venue by motion, the burden of sustaining venue lies with the plaintiff. *See McCaskey v. Continental Airlines, Inc.*, 133 F.Supp.2d 514, 523 (S.D.Tex.2001) (citing *Seariver Maritime Fin. Holdings, Inc. v. Pena*, 952 F.Supp. 455, 458 (S.D.Tex.1996)); *Bigham v. Envirocare of Utah, Inc.*, 123 F.Supp.2d 1046, 1048 (S.D.Tex.2000); *E.E.O.C. v. Mustang Mobile Homes, Inc.*, 88 F.Supp.2d 722, 724 (W.D.Tex.1999); *but see Texas Marine & Brokerage, Inc. v. Euton*, 120 F.Supp.2d 611, 612 (E.D.Tex. 2000); *Bounty–Full Entm't, Inc. v. Forever Blue Entm't Group, Inc.*, 923 F.Supp. 950, 957–58 (S.D.Tex.1996). In the absence of an evidentiary hearing, a court should allow a plaintiff to carry this burden by setting forth facts that, taken as true, establish venue. *See McCaskey*, 133 F.Supp.2d at 523; *Bigham*, 123 F.Supp.2d at 1048; *cf. Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994) (holding that when a court rules upon a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, "the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper."). The court should, therefore, accept uncontroverted facts contained in plaintiff's pleadings as true and resolve conflicts in the parties' affidavits in the plaintiff's favor. *McCaskey*, 133 F.Supp.2d at 523. Thus, although a defendant need not affirmatively disprove all bases for the plaintiff's venue choice, the court will nevertheless give plaintiff every benefit of the doubt in ascertaining what facts control its legal decision. *See id.*

## III.

 The Shipping Defendants maintain that venue is improper in this case, and a Rule 12(b)(3) dismissal is therefore warranted, in light of the forum selection clause in the MME Agreement.[4] The Court disagrees, however, because when a forum selection clause is limited to matters

---

**3.** Section 1406(a) reads as follows: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any division in which it could have been brought." 28 U.S.C. § 1406(a).

**4.** In a recent opinion, this Court observed that the Fifth Circuit has not conclusively established that Fed.R.Civ.P. 12(b)(3) is in fact the precise procedural rule governing motions to dismiss based upon the enforcement of forum selection clauses. *See MacPhail v. Oceaneering Int'l, Inc.*, 170 F.Supp.2d 718, 721 (S.D.Tex.2001). As noted in *MacPhail*, however, the decision reached by the Fifth Circuit in *Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33 (5th Cir.1997), suggests that the Fifth Circuit would indeed adopt such a view. *See MacPhail*, 170 F.Supp.2d at 721. In *Mitsui*, the District

Court characterized its dismissal pursuant to a forum selection clause as a Rule 12(b)(3) motion to dismiss. *See Mitsui & Co.(USA), Inc. v. M/V MIRA*, No. CIV.A.95–4224, 1996 WL 444193, at *1 (E.D.La. Aug.7, 1996). Although the Fifth Circuit did not address the exact procedural issue upon appeal, the Court fully affirmed the District Court's decision to dismiss the lawsuit. *See Mitsui*, 111 F.3d at 37. Accordingly, in light of the *Mitsui* decision, coupled with persuasive authorities from the Seventh, Ninth and Tenth Circuits, this Court treats the Shipping Defendants' Motion to Dismiss pursuant to a Greek forum selection clauses as a Rule 12(b)(3) motion. *See MacPhail*, 170 F.Supp.2d at 721; *see also, e.g., R.A. Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir.1996) (concluding that a motion to dismiss premised upon enforcement of forum selection clause is governed by Rule 12(b)(3)); *Frietsch v. Refco, Inc.*, 56 F.3d

of contract interpretation or enforcement alone, it is inapplicable to litigation arising from torts committed in the course of the contractual relationship. *See Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 222 (5th Cir.1998) ("[W]e must look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clauses"); *Manetti–Farrow v. Gucci Am.,* 858 F.2d 509, 514 (9th Cir.1988) ("Whether a forum selection clause applies to tort claim depends on whether resolution of the claims relates to interpretation of the contract"). As Plaintiff points out, the forum selection clause at issue in this case explicitly refers to "any disagreement arising from the *enforcement of this contract ...*," but notably, the clause does not refer to disagreements arising from torts committed by any of the contracting parties.

Moreover, the clause lacks broad language purporting to make the clause applicable to tort claims (i.e. "any and all claims arising out of Plaintiff's employment"). Consequently, the precise language of the forum selection clause in the MME Agreement mandates a conclusion that the clause itself is irrelevant to the instant action.[5] Accordingly, the Shipping Defendants' Rule 12(b)(3) Motion to Dismiss pursuant to the Greek forum selection clause is hereby **DISMISSED.**[6]

## IV.

The doctrine of *forum non conveniens* derives from the proposition that "[i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 722, 116 S.Ct. 1712, 1724, 135 L.Ed.2d 1 (1996). Pursuant to

825, 830 (7th Cir.1995) (deciding that Rule 12(b)(3) is the proper procedural tool for a motion to dismiss based upon a forum selection clause); *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 956 (10th Cir. 1992) (same).

**5.** The *Marinechance* decision lends support to this conclusion. In that case, the Fifth Circuit considered two competing forum selection clauses. *See Marinechance,* 143 F.3d at 222–23. The first clause pertained to disputes regarding the "implementation and interpretation of [the] overseas employment contract." *Id.* at 222. The second clause encompassed "any and all disputes or controversies arising out of or by virtue of [the] contract." *Id.* Ultimately, the Fifth Circuit decided that the broad language of the second clause included tort, as well as contractual, causes of action. *See id.* at 223. With respect to the first clause, however, the Court assumed, without deciding, that the more narrow language failed to cover tort causes of action. *See id.* In this action, the language of the forum selection clause at issue ("disagreement arising from enforcement of this contract") is more similar to the wording of the narrow clause in *Marinechance* ("implementation and interpretation of the overseas employment contract") than to the wording of

the broader clause ("any and all disputes or controversies arising out of or by virtue of [the] contract"). Thus, the Court's conclusion in this case regarding the scope of the forum selection clause at issue falls directly in line with the assumption made by the Fifth Circuit in *Marinechance.*

**6.** The Shipping Defendants also argue that dismissal is warranted pursuant to a forum selection clause contained in the New Collective Agreement for the period 1.1.2000 to 31.12.2000 ("Collective Agreement"), a collective bargaining agreement negotiated between the Panhellenic Seamen's Federation and the Greek Shipowners Union. The Court rejects this argument, however, on the basis of the precise language of the MME Agreement. Specifically, the portion of the MME Agreement that references the Collective Agreement states that "[i]n the event of the illness of the [Plaintiff], his compensation will be adjusted according to the [Collective Agreement] and, in the event of an accident, according to [the Collective Agreement]." Thus, the MME Agreement incorporates only those provisions of the Collective Agreement relating to the method of computing Plaintiff's wages in the event of illness or accident, and does not incorporate the Collective Agreement's forum selection clause.

this doctrine, a court may decline to exercise its jurisdiction if the party moving for dismissal establishes that the convenience of the parties and the court, coupled with the interests of justice, indicate that the lawsuit is better suited for adjudication in a different forum. *See Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir.2001). In *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), the United States Supreme Court elucidated the two-part framework for analyzing the *forum non conveniens* doctrine in the international context. First, "the court must determine whether there exists an alternative forum." *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. Next, the court must decide which forum is best suited to entertain the litigation. *See id.* at 255–56, 102 S.Ct. at 265–66. While carrying out this inquiry, a court must remain mindful that "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Id.* at 256, 102 S.Ct. at 266.

■ In his Response to the Shipping Defendants' Motion to Dismiss, Plaintiff expressly states that he "does not contest that Greece is [an] adequate and available [forum] as to the Defendants." As such, the Court will bypass the first step of the *Piper Aircraft* analysis and proceed direct-

ly to the second prong of the requisite analysis. When undertaking this step, a court must decide whether "certain private and public interest factors weigh in favor of dismissal." *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001). The "private interest" factors include: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and cost of obtaining attendance of willing, witnesses; possibility of viewing the premises, if such viewing would be appropriate to the action; all other practical problems that make a trial of a case easy, expeditious and inexpensive; enforceability of judgment; and whether the plaintiff has sought to vex, harass or oppress the defendant. *Karim*, 265 F.3d at 268 n. 14 (citations omitted). The "public interest" factors include: administrative difficulties, reasonableness of imposing jury duty on the people of the community, holding the trial in the view of those affected, and the local interest in having localized controversies decided at home.[7] *See id.*

■ After careful and thoughtful consideration of the precise facts of this case, the Court concludes that the relevant private interest factors disfavor *forum non conveniens* dismissal of Plaintiff's claims against the Shipping Defendants.[8] With

---

7. The Shipping Defendants' assertion that the "Fifth Circuit also considers two important supplementary factors in the maritime *forum non conveniens* analysis: 1) admiralty choice of law; and 2) forum selection clauses" is incorrect. The Fifth Circuit has explicitly held that "all cases, including Jones Act and maritime cases, are governed by the dictates of *Reyno*." *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1164 n. 25 (5th Cir.1987) (en banc), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400, *opinion reinstated on other grounds*, 883 F.2d 17 (5th Cir.1989) (en banc); *see also Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1379 (5th Cir.1988).

8. Although Plaintiff amended his Complaint to add IMS and UMS as Defendants after the Shipping Defendants filed the instant Motion, the Court feels compelled to analyze their request for a *forum non conveniens* dismissal in light of the current facts of this case. The fact that this action now involves three American Defendants (and still no Greek Defendants) weighs heavily against a *forum non conveniens* dismissal. While severance (and then dismissal) of the claims against the Shipping Defendants is possible, it is nevertheless undesirable. First, it would be far more convenient to resolve all claims against all five Defendants in one trial. Secondly, trying the claims against all five Defendants may ultimately benefit the Shipping Defendants. If

respect to the question of ease of access to sources of proof, the private interests favor the United States. Plaintiff was injured at the Port of Houston, initially treated by physicians at Houston's Hermann Hospital and is still under the care of local physicians. As such, the bulk of Plaintiff's medical records are located in the United States. Relevant accident reports and the accident site itself are also located in this country. Furthermore, the records pertaining to Plaintiff's products liability causes of action (information concerning the design, manufacture and testing of the rope in question) are kept in America.

The private interests likewise favor the United States with respect to the cost of obtaining witnesses at trial. The M/V EIRINI crew members present at the time of Plaintiff's injury and the corporate representatives of Makri and Overseas reside outside of the United States—in Greece, El Salvador, Colombia, Liberia, Panama and Guyana. On the other hand, Plaintiff's primary physicians (his orthopedic surgeon and plastic surgeon), the individuals who initially investigated the accident (employees of the Port of Houston Police Department) and the corporate representatives of Avior, IMS and UMS reside in the United States. Thus, although a significant fraction of the potential witnesses reside in or around Greece, an even greater concentration of the potential witnesses reside in the United States or closer to the United States than to Greece.[9] Furthermore, the Shipping Defendants have made no showing that *any* of the potential witnesses are subject to service

by a Greek tribunal or, in the alternative, willing to voluntarily travel to Greece in order to testify at trial.

The remaining private interest factors also favor a trial in the United States. Most notably, a dismissal of this action at this time (less than two months prior to trial) would significantly delay the resolution of Plaintiff's claims and bring about increased expense to all involved.[10] Next, because the Plaintiff avers (and Defendants do not state otherwise) that none of the Defendants have assets in Greece, the Court questions whether a judgment against them would be enforceable there. Finally, the Court detects absolutely no suggestion that Plaintiff has attempted to vex, harass or oppress any of the Defendants by haling them into an American Court.

The Court likewise concludes that the relevant public interest factors also disfavor *forum non conveniens* dismissal. Most significantly, the Court observes that the foreign Defendants have availed themselves of the privilege of doing business in this country and that Plaintiff was severely injured in an incident that raises questions about the safety procedures and equipment used at an American port. Simply put, this action has significant connections to the United States suggesting that, on balance, this forum is just as appropriate (if not more appropriate) a venue for this litigation as a Greek court. The Court is fully cognizant that this transnational litigation will inevitably involve complications arising from the fact that the evidence and parties are far-flung.

Plaintiff's injuries are ultimately determined to arise all, or in part, from a product defect, the Shipping Defendants may be absolved of liability.

9. Although Guyana and Liberia are closer to Greece, El Salvador, Panama and Colombia are closer to the United States.

10. The Court is perplexed as to why, if trying this case in the United States is so inconvenient, the Shipping Defendants waited until almost one year after this action was filed, and a mere six weeks before trial, to seek dismissal on *forum non conveniens* grounds.

However, the Shipping Defendants have failed to show that trying this case in Greece would ease these burdens. Rather, the evidence demonstrates that such a scenario would simply create an alternative set of inconveniences and complications to all involved. Accordingly, the Court finds that the Shipping Defendants have not established that the conveniences of the Parties and the Court, along with the interests of justice, indicate that the lawsuit is better suited for adjudication in Greece. Consequently, the Shipping Defendants' Motion to Dismiss pursuant to the doctrine of *forum non conveniens* is hereby **DENIED**.[11] All Parties are hereby **ORDERED** to proceed in the normal course of this litigation with a view towards the amicable resolution of this case.

**IT IS SO ORDERED.**

---

11. The Court emphasizes that it is not making any ruling today regarding the issue of whether Greek or American law governs the resolution of Plaintiff's claims.