Petition for Writ of Mandamus Denied and Opinion filed September 22,
2008








 

Petition
for Writ of Mandamus Denied and Opinion filed September 22, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00116-CV

____________

 

IN RE TCW GLOBAL PROJECT FUND II, LTD., TCW ASSET
MANAGEMENT COMPANY, and TRUST COMPANY OF THE WEST, Relators

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

O P I N I
O N

On
February 22, 2008, relators, TCW Global Project Fund II, Ltd.,
TCW Asset Management Company, and Trust Company of the West, filed a petition
for writ of mandamus in this court.  See Tex. Gov=t Code Ann. ' 22.221 (Vernon 2004); see also
Tex. R. App. P. 52.  In the petition, relators ask this court to compel the
Honorable William R. Burke, Jr., presiding judge of the 189th District Court of
Harris County, to vacate his January 25, 2008 order denying their motion to
dismiss based on a forum-selection clause, and grant the same.  We deny
relators= petition.  








                                                               Background

TCW
Global Fund II, Ltd. is a project fund investing in global energy and
infrastructure projects.  TCW Asset Management Company is the investment
advisor for TCW Global Fund II.  Trust Company of the West is an investment
manager.  Real party in interest, British American Offshore Limited (ABAOL@), is an Aberdeen, Scotland-based
offshore drilling company with its principal place of business in London,
England.  BAOL is a wholly-owned subsidiary of Houston-based Rowan Companies,
Inc.  BAOL markets Rowan=s Gorilla-class drilling rigs for use in the North Sea.  

In
January 2002, the U.K. Department of Trade and Industry awarded certain oil
drilling interests in the Ardmore Field, located in the U.K. sector of the
North Sea, to Tuscan Energy (Scotland) Limited (ATuscan@) and its joint venture partner Acorn
North Sea Limited (AAcorn@).  Ardmore Field was brought into production in 1975, and
abandoned in 1992.  Tuscan and Acorn believed that industry technology had
developed such that further development of the Ardmore Field was commercially
viable.  Trust Company of the West and TCW Global Fund II were the initial
purchasers and holders of the notes issued by Tuscan to finance exploration of
the Ardmore Field.  

On
October 10, 2002, BAOL and Tuscan entered into an agreement entitled ADrilling and Production Jack-up Rig
Contract@ (the Arig contract@), under which BAOL agreed to operate
a Gorilla VII drilling rig in connection with the production of the Ardmore
Field.  Tuscan agreed to pay a day rate for the rig calculated on the price of
Brent Crude oil.  

In early
2004, Tuscan began to experience cash flow problems caused by (1) certain
technical difficulties with the drilling operations; and (2) rising Brent Crude
oil prices, triggering increases in Tuscan=s rig day rate.  By late 2004, when
Tuscan had not paid BAOL for several months of drilling and production, BAOL
advised Tuscan that it would cease operations if Tuscan did not pay the
arrears.  








On
November 23, 2004, BAOL and relators met in relators= Houston office.  Relators agreed to
lend Tuscan $15 million for continued operations in the Ardmore Field.  This
loan was contingent on an agreement by BAOL to reduce the day rate for the
Gorilla VII drilling rig and extend past arrears under the original rig
contract.

On December
22, 2004, Tuscan and BAOL entered into an amended rig contract.[1] 
The amended rig contract provided for a flat rig day rate of $120,000; a
schedule for the payment of Tuscan=s arrears to BAOL; and Tuscan=s commitment to fund a Aplug and abandonment@ account.  At that same time, Trust
Company of the West and TCW Global Fund II invested an additional $15 million
in the project.  

On
October 7, 2005, BAOL filed suit against relators for promissory estoppel,
tortious interference, negligent misrepresentation, and fraud.[2] 
BAOL alleges that, beginning in January 2004, relators devised a strategy to
sell the Ardmore Field project to another group of investors.  BAOL asserts
that the continued presence of the Gorilla VII drilling rig was critical to
that effort.  That is, with continued production, the project would remain
attractive to investors; without the Gorilla VII drilling rig, Tuscan would not
be able to produce any revenue and the Ardmore Field operation would collapse. 
BAOL contends that relators made numerous promises in an effort to keep the
Gorilla VII drilling rig on location in the Ardmore Field.  








On
January 23, 2006, relators, although not signatories to the BAOL/Tuscan rig
contracts, filed a motion to dismiss based on the forum-selection clause found
in the rig contracts.[3]  Relators
argued that BAOL was estopped under Texas law from denying the application of
the forum-selection clause because (1) BAOL=s claims relate to, and presumed the
existence of, the rig contracts; and (2) BAOL=s suit is explicitly based on the
notion that relators were critical transaction participants in the negotiation
and performance of the rig contracts.  

The
parties agreed to conduct discovery related to the motion to dismiss and BAOL
filed its response after the completion of discovery.  On January 25, 2008, the
trial court denied relators= motion to dismiss.  Relators complain that the trial court
abused its discretion by denying their motion to dismiss based on the
forum-selection clause.  

                                          Mandamus Standard of Review

Mandamus
relief is available to enforce forum-selection clauses.  In re AutoNation,
Inc., 228 S.W.3d 663, 667 (Tex. 2007) (orig. proceeding).  To be entitled
to the extraordinary relief of a writ of mandamus, the relator must show that
(1) the trial court clearly abused its discretion, and (2) it has no adequate
remedy on appeal.  In re Team Rocket, L.P.,256 S.W.3d 257,259 (Tex.
2008) (orig. proceeding).  

                                                                      Waiver








When a
party seeks to enforce a forum-selection clause, the trial court must determine
whether the claims in question fall within the scope of that clause.  Deep
Water Slender Wells, Ltd. v. Shell Int=l Exploration & Prod., Inc., 234 S.W.3d 679, 687B88 (Tex. App.CHouston [14th Dist.] 2007, pet.
filed) (citing Marinechance Shipping, Ltd. v. Sebastian, 143 F.3d 216,
221B22 (5th Cir. 1998)).  If the claims
fall within the scope of the forum-selection clause, the court must decide
whether to enforce the clause.  Id. at 688.  After resolving issues of
scope and enforceability, a trial court may have to decide whether a
nonsignatory can enforce a forum-selection clause.  Id. at 687.  Thus,
the scope of the forum-selection clause is the threshold issue that must be
decided before addressing whether the forum-selection clause is enforceable and
whether relators are entitled to enforce the clause as nonsignatories.  

BAOL
contends that relators waived their right to challenge the trial court=s denial of their motion to dismiss
in this original proceeding.  In response to relators= motion to dismiss, BAOL argued that
its tort claims against relators did not fall within the narrow scope of the
forum-selection clause.  However, relators did not raise the scope of the
forum-selection clause in its petition filed in this court, but only addressed
scope in its reply brief in response to BAOL=s argument that relators had waived
any argument regarding scope of the forum-selection clause.  BAOL asserts that
because relators have not challenged all potential bases for the order denying
their motion to dismiss, they have waived their challenge to the trial court=s order. 

Relators
contend that BAOL erroneously relies on rules applicable to summary judgment
proceedings, not original proceedings.  Relators rely on In re International
Bank of Commerce in support of their position that summary judgment rules
have no application here.  No. 13-07-693-CV, 2008 WL 192260 (Tex. App.CCorpus Christi Jan. 18, 2008, orig.
proceeding [mand. denied]) (mem. op.).  In that case, the trial court refused
to compel arbitration based on its determination that the bank had waived its
right to arbitrate.  Id. at *14.  The bank challenged that finding in
its petition for writ of mandamus, but failed to address the other defenses to
arbitration that real parties in interest had raised in the trial court.  Id. 
The issue in the mandamus proceeding was whether the bank was required to
challenge the other potential grounds to defeat arbitration that were not
expressly ruled on by the trial court.  Id. 








The
court of appeals observed that the parties had not cited to any opinion in an
original proceeding in which summary judgment principles had been applied.  Id.
at *15.  However, the court recited the summary judgment rule that, when the
court states the basis for its ruling, an appellant is required to attack only
the stated ground for the ruling.  Id.  The court of appeals will
usually decline to address the alternative grounds and, instead, remand the
case to the trial court for consideration of the additional grounds.  Id. 
However, when the parties raise the alternative grounds, the court of appeals,
in the interest of judicial economy, may rule on those grounds presented to the
trial court, but not expressly ruled on.  Id. (citing Cincinnati Life
Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996)).[4] 


In the
interest of judicial economy and at the Ainvitation@ of the real parties in interest, the
court of appeals decided to address the other defenses to arbitration, and
declined to hold that the bank had waived its right to challenge the order
denying the motion to compel arbitration because (1)  the parties had briefed
the issues in great detail in the trial court, (2) the other defenses had
consumed most of the trial court=s time and efforts at the hearing on
the motion to compel arbitration, and (3) the bank had briefed the issue in its
reply brief.  Id.  It is apparent that In re International Bank of
Commerce relied, at least in part, on summary judgment rules and therefore
does not offer support to relators= position that summary judgment rules
are inapplicable to original proceedings. 








In re
International Bank of Commerce is distinguishable because here, the trial court did not
specify any particular ground on which it relied in denying relators= motion to dismiss.  See Holloway
v. Starnes, 840 S.W.2d 14, 23 (Tex. App.CDallas 1992, writ denied) (stating
that if summary judgment may have been granted, properly or improperly, on a
ground not challenged, it must be affirmed).  

However,
we need not decide whether it is appropriate to apply summary judgment rules to
this original proceeding.  In re International Bank of Commerce also
relied on the bank=s having addressed the other defenses in its reply after the
real party in interest had pointed out the deficiency in the bank=s petition.  2008 WL 192260, at *14B15.  It is well-settled that Rule
38.3 of the Texas Rules of Appellate Procedure does not allow an appellant to
include in a reply brief a new issue in response to a matter pointed out in the
appellee=s brief but not raised by the
appellant=s original brief.  Dallas County v. Gonzales, 183 S.W.3d 94, 104
(Tex. AppCDallas 2006, pet. denied); Howell v. Tex. Workers= Comp. Comm=n, 143 S.W.3d 416, 439 (Tex. App.CAustin 2004, pet. denied); In re
M.D.H., 139 S.W.3d 315, 318 (Tex. App.CFort Worth 2004, pet. denied); Barrios
v. State, 27 S.W.3d 313, 322 (Tex. App.CHouston [1st Dist.] 2000, pet. ref=d).  

Rule
52.5 of the Texas Rules of Appellate Procedure, providing for reply briefs in
original proceedings, states that A[t]he relator may file a reply
addressing any matter in the response.@  Tex. R. App. P. 52.5.  Rule 38.3
similarly provides that A[t]he appellant may file a reply brief addressing any matter
in the appellant=s brief.@  Tex. R. App. P. 38.3.  Except for identifying the parties
as Arelator@ and Aappellant,@ Rules 52.5 and 38.3 are identical. 
Because Rule 38.3 does not permit an appellant to assert new grounds for
reversal in a reply brief after the omitted grounds have been pointed out in a
response, we see no reason to interpret Rule 52.5 to permit such a practice. 
Thus, we conclude that relators have waived the argument that the scope of the
forum-selection clause is sufficiently broad to include BAOL=s tort claims.  








Relators
further argue that their assertion that the trial court erred in denying their
motion to dismiss encompasses every subsidiary question that is fairly included
within that issue.  See Tex. R. App. P. 52.3(f) (AThe petition must state concisely all
issues or points presented for relief.  The statement of an issue or point will
be treated as covering every subsidiary question that is fairly included.@).  Id.  Nevertheless, the
petition Amust contain a clear and concise argument of the contentions made, with
appropriate citations to authorities and to the appendix or record.@  Tex. R. App. P. 52.3(h).  Relators
failed to present any argument or authority in their petition in support of the
position that BAOL=s tort claims are included within the scope of the
forum-selection clause.  See In re Lexington Ins. Co., No. 14-03-01236-CV,
2004 WL 210576, at *2 (Tex. App.CHouston [14th Dist.] Feb. 2, 2004,
orig. proceeding [mand. denied]) (mem. op.) (holding relator waived issue by
failing to provide argument or authority to support issue); In re Neely,
No. 01-02-00355-CV, 2003 WL 164478, at *3 (Tex. App.CHouston [1st Dist.] Jan. 23, 2003,
orig. proceeding) (mem. op.) (same).  We hold that relators have waived any
argument that the scope of the forum-selection clause is sufficiently broad to
include BAOL=s claims.  

                                                                Conclusion

Because
relators have waived any challenge to the scope of the forum-selection clause,
we do not address whether relators, as nonsignatories, are entitled to enforce
the clause.  Under these circumstances, relators have not shown that the trial
court abused its discretion by denying their motion to dismiss and, therefore,
are not entitled to the extraordinary relief of a writ of mandamus.  

Accordingly, we deny relators= petition for writ of mandamus.

 

 

 

/s/        Eva M. Guzman

Justice

 

 

Petition Denied and Opinion filed
September 22, 2008.

Panel consists of Justice Yates,
Guzman, and Brown.









            [1]  The amended rig
contract is entitled, ADeed of Variation & Amendment.@  





            [2]  On November 14,
2005, relators removed this case to federal court, which remanded it back to
state court.  On January 20, 2006, relators filed a special appearance, which
they withdrew on March 31, 2006. 





            [3]  Relators filed a
motion dismiss based on forum non conveniens.  However, relators do not seek
mandamus relief for the denial of that motion.





            [4]  See
Cincinnati Life Ins., 927 S.W.2d at 625 (A[R]ule 166a does not prevent an appellate court from affirming the
judgment on other grounds the parties properly raised before the trial court,
when the trial court grants summary judgment specifically on fewer than all
grounds asserted.  Rather, our rules of appellate procedure give appellate
courts the authority, when reviewing judgments of lower courts, to render the
judgment or decree that the court below should have rendered.@).