COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS






STOKES INTEREST, G.P.,

                                    Appellant,

v.

GEORGES SANTO-PIETRO,

                                    Appellee. 

§
 
§
 
§
 
§
 
§

§


No. 08-08-00326-CV

Appeal from
 143rd District Court

of Reeves County, Texas

(TC # 08-05-19089-CVR)



 

 

 





O P I N I O N

            This appeal stems from the trial court’s enforcement of a contractual forum selection clause. 
Stokes Interest, G.P. filed suit in Reeves County against Georges Santo-Pietro (GSP) alleging a
breach of warranty under the Deceptive Trade Practices Act as well as common law fraud and
fraudulent misrepresentation. For the reasons that follow, we affirm.
FACTUAL BACKGROUND
            On August 8, 2006, Thermonomics, Inc. and GSP entered into an Agent Agreement
containing a forum selection clause: 
* * * * *
 

12. Choice of Law, Jurisdiction and Process. The laws of the State of California
shall govern this Agreement. Venue and jurisdiction shall be in Beverly Hills,
California.


 

The agreement recited that GSP held oil, gas and mineral leases which were identified in Exhibit A
as (1) 320 acres located: All of the South ½, Section 28, Block C-8 P.S.L., Reeves County Texas,
and (2) 320 acres located: All of the North ½, Section 19, Blk. C-8 P.S.L., Reeves County Texas. 
The agreement also recited that GSP wanted to sell the leases, along with leases and other oil and
gas assets owned by Thermonomics and identified in Exhibit B, to be offered in a package to
targeted prospective oil and gas production companies/operators. To effectuate that intent, GSP
appointed Thermonomics as his agent. Thermonomics was granted the exclusive right during a 45-day period to offer the leases for sale to prospective buyers. Thermonomics agreed to pay GSP
$37,500 as a non-refundable advance to be credited against the share of the gross proceeds to be
distributed to GSP for any sale generated by Thermonomics. Thermonomics was also granted the
right to renew the agreement for an additional 45 days by paying another $37,500 non-refundable
advance fee. If no sale were consummated during the term of the contract, Thermonomics would
forfeit the advances paid. Thermonomics paid the $75,000 advance fees


 and consummated a sale
of GSP’s mineral interests to Chesapeake Exploration Limited Partnership. The sales agreement,
dated October 18, 2006, lists the parties as Chesapeake and The Pecos Group, which is comprised
of Thermonomics, GSP, Stokes, and Jeff Moralez, d/b/a/ Savana Oil and Gas. By their respective
signatures:
The Pecos Group represents and warrants that it has a full one hundred percent
(100%) collective ownership interest in each of the ROW’s,


 totaling approximately
eighty (80) miles, that are in full force and effect and that The Pecos Group has the
right to sell and assign the ROW’s into Chesapeake. 

            Stokes is the assignee of Thermonomics. It filed suit against GSP alleging damages arising
from misrepresentations that he owned a full 100 percent working interest in his oil and gas leases
when he knew he only owned a 75percent interest. The Chesapeake sale purportedly fell through
because of these misrepresentations. Based on the venue provision in the Agent Agreement, the trial
court dismissed the lawsuit. 
FORUM SELECTION
Standard of Review
             A motion to dismiss is the proper procedural mechanism for enforcing a forum selection
clause. Accelerated Christian Educ., Inc. v. Oracle Corp., 925 S.W.2d 66, 70 (Tex.App.--Dallas
1996, no writ). Consistent with the standard of review we apply in reviewing motions to dismiss
generally, we review dismissals predicated on forum selection clauses for an abuse of discretion. 
See, e.g., My Café-CCC, Ltd. v. Lunchstop, Inc., 107 S.W.3d 860, 864 (Tex.App.--Dallas 2003, no
pet.). To the extent that our review involves contractual interpretation of a forum selection clause
--a legal matter--the standard of review is de novo. See Southwest Intelecom, Inc. v. Hotel Networks
Corp., 997 S.W.2d 322, 324 (Tex.App.--Austin 1999, pet. denied). 
            Traditionally, Texas state courts and federal courts used different analytical constructs to
determine the enforceability of mandatory forum selection clauses.


 Phoenix Network Technologies
(Europe) Ltd. v. Neon Systems, Inc., 177 S.W.3d 605, 611-14 (Tex.App.--Houston [1st Dist.] 2005,
no pet.). But the Texas Supreme Court has now adopted the federal approach. Michiana Easy Livin’
Country, Inc. v. Holten, 168 S.W.3d 777, 793 (Tex. 2005); In re Automated Collection Technologies,
Inc., 156 S.W.3d 557, 558-59 (Tex. 2004); In re AIU Ins. Co., 148 S.W.3d 109, 111-14 (Tex. 2004). 
Under the applicable legal standard, the trial court presumes that a mandatory forum selection clause
is valid and enforceable. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 1913,
32 L.Ed.2d 513 (1972); In re AIU Ins. Co., 148 S.W.3d at 111-12. Full effect is given absent a
strong showing by the resisting party that the court should set aside the clause because (1) the clause
is invalid based on such reasons as fraud, undue influence, or overweening bargaining power; or (2)
enforcement would be unreasonable and unjust. M/S Bremen, 407 U.S. at 10-15, 92 S.Ct. at
1913-16; In re AIU Ins. Co., 148 S.W.3d at 111-12. Enforcement of a forum selection clause would
be unreasonable and unjust if (1) enforcement would contravene a strong public policy of the forum
in which suit was filed, or (2) the balance of convenience is strongly in favor of litigation in the
forum in which suit was filed, and litigation in the contractual forum would be so manifestly and
gravely inconvenient to the resisting party that it effectively would be deprived of a meaningful day
in court. M/S Bremen, 407 U.S. at 15-19, 92 S.Ct. at 1916-18; In re AIU Ins. Co., 148 S.W.3d at
111-12.
 

Lack of Pleading
            Stokes first complains that dismissal was improper because GSP failed to file a formal
motion to dismiss and his trial brief was insufficient to join the issue. GSP responds that Stokes
waived any defect in the pleadings by his failure to object. We agree. During the hearing, the court
announced its intention to treat the memorandum of law as a motion to dismiss because there was
no separately filed motion. Stokes stood silent and the hearing continued. To preserve error, the
complaint must be made to the trial court by a timely request, objection, or motion that states the
grounds for the ruling that the complaining party seeks from the trial court with sufficient specificity
to make the trial court aware of the complaint, unless the specific grounds are apparent from the
context. Tex.R.App.P. 33.1(a)(1)(A). 
Convenient Forum
            In Point of Error One, Stokes contends that the trial court should not have addressed forum
nonconviens and that it incorrectly determined that California was a more convenient forum. Stated
differently, Stokes claims that the issue was not properly before the court because GSP did not plead
that California was a more convenient forum, nor did he offer any evidence. His argument is
premised on the wrong legal standard. Deep Water Slender Wells, 234 S.W.3d at 692, citing
Michiana Easy Livin’ Country, Inc., 168 S.W.3d at 793. Because the trial court presumes that a
mandatory forum selection clause is valid and enforceable, GSP was not required to show that
California was a more convenient forum. Stokes had the burden to demonstrate that (1) the clause
was invalid due to fraud, undue influence, or overweening bargaining power; or (2) enforcement
would be unreasonable and unjust. M/S Bremen, 407 U.S. at 10-15, 92 S.Ct. at 1913-16; In re AIU
Ins. Co., 148 S.W.3d at 111-12. Because it failed to do so, we overrule Point of Error One.
Scope of the Forum Selection Clause
            In Point of Error Two, Stokes challenges the forum selection clause as vague, narrow, and
inapplicable. It argues that the tort causes of action alleged here arise out of the Chesapeake sales
agreement and are not subject to the forum selection provision of the Agent Agreement. When a
party seeks to enforce a mandatory forum selection clause, a court must determine whether the
claims in question fall within the scope of that clause. See Marinechance Shipping, Ltd. v.
Sebastian, 143 F.3d 216, 221-22 (5th Cir. 1998). The court bases this determination on the language
of the clause and the nature of the claims that are allegedly subject to the clause. Id. 
            Stokes argues that since the forum selection clause in the Agent Agreement does not even
identify the subject matter to which it applies, it should not “encompass claims from subsequent
independent contracts and oral misrepresentations which are only tangentially related to the Agent
Agreement.” GSP counters that since the forum selection clause has no limiting language, it is all
inclusive. He concludes that in the absence of some limiting language, the clause at issue can only
be read to provide venue and for “all” claims arising out the agreement. We agree. 
            We next look to the nature of the claims that are subject to the clause. Marinechance
Shipping, 143 F.3d at 222. Stokes’ claims against GSP include breach of warranty under the DTPA
and fraudulent misrepresentation under common law. Stokes argues that these claims are based on
GSP’s knowing misrepresentations in the sales agreement and are not subject to the forum selection
provision of the prior Agent Agreement. The record belies these arguments.
            In its original petition, Stokes claimed its actual damages included the $75,000 advance fees
paid to GSP in connection with the oil and gas leases.


 The basis for payment of the advance fees
is the Agent Agreement. The petition also alleged that as a proximate result of the
misrepresentations, the sale of 72 acres of Stokes’ oil and gas leases did not close. Sandy Stokes
testified:
DIRECT EXAMINATION
Q: Are you suing for your 72 acres that you purchased in reliance on the
representation to Mr. Morales [sic] by Mr. Pietro made after the Agency Agreement
that he owned one hundred percent?

            A: Yes, sir. 

Jeff Moralez testified about the 72 acres as well:

DIRECT EXAMINATION
 
Q: Were you active with Mr. Stokes in acquiring the 72 acres that are being sued for
in this case?
 
A: Yes, sir, very active. 

* * * * *
 
Q: And activities in connection with the 72-acre lease that Mr. Stokes acquired
subsequent to August 8th, 2006, where were those performed?
 
A: Here in Pecos, Texas, Reeves County. 

* * * * *

CROSS EXAMINATION
 
Q: The 72 acres, is that referred to as the Voulgaris [sic] lease?
 
A: That’s correct.

            Q: And do you realize that is attached to the Agency Agreement as an exhibit?
 
A: I do now.
 
Q: Okay. So what you’re saying is the 72 acres was contemplated specifically in the
Agency Agreement? Would you like to see your petition, sir?
 
A: Yes, sir. 

* * * * *
 
Q: I refer to you the Agency Agreement, Exhibit A to the petition, dated August 8th,
2006. Does that appear to be a true and correct copy of the exhibit to your petition?
 
A: That’s the agent agreement.
 
Q: Now I want to refer you to Exhibit B to that Agency Agreement. Does it
specifically refer to 72.36 acres referred to as the voulgaris [sic] lease?

            A: Yes. However --
 
Q: Thank you, sir. Now, what you said previously about the 72 acres not being a part
of the Agency Agreement is not correct, is it?
 
A: Well, that’s not true, because that lease we had acquired prior, and it expired, and
once we got Mr. Pietro on board, we went and re-leased that property.
 
Q: Okay. But it was referred to specifically in the Agency Agreement dated
August 8th, 2006?
 
A: We just read that, yes. 

Although Mr. Stokes and Mr. Moralez spoke in terms of purchase and acquisition of the 72 acres
after the Agent Agreement was executed, those 72 acres, known as the Volgaris lease, are listed in
Exhibit B of the Agent Agreement as assets of Thermonomics. Only when confronted with Exhibit
B did Moralez clarify that the lease had simply been renewed. And Exhibit B actually addressed the
provisions for renewal:
1. 72.36 Acres referred to as the Volgaris Lease located: West part of the N/2, Sec
28, Blk. C-8 P.S.L. This is Paid-Up 80% lease with 10% to the Land Owner and
10% to the State of Texas. It is a 3 year primary term with a 2 year option at $300.00
per acre taken July 12th, 2006. 

Moralez could not remember the date that the lease was renewed, but he claimed he had to pay
$22,000 for it. Simple multiplication informs us that pursuant to the terms of the lease, a renewal
within the option period would cost $21,708 (72.36 acres X $300 per acre). 
            Clearly the basis for all of Stokes’ claims stem from the Agent Agreement. We overrule
Point of Error Two and affirm the decision of the trial court. 
 
July 28, 2010                                                                                                                                                   ANN CRAWFORD McCLURE, Justice

Before McClure, J., Rivera, J., and Guaderrama, Judge
Guaderrama, Judge, sitting by assignment