REVISED AUGUST 27, 2002

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 02-40317**
_____


**ALISTAIR J. MACPHAIL,**

**Plaintiff-Appellee,**


**VERSUS**


**OCEANEERING INTERNATIONAL, INC.,**

**Defendant-Appellant.**


_____

Appeal from the United States District Court
For the Southern District of Texas
_____

August 7, 2002


Before DAVIS, DeMOSS, and STEWART, Circuit Judges.

DeMOSS, Circuit Judge:

This is an appeal from an action brought by Alistair MacPhail (MacPhail) as an admiralty and maritime law claim against Oceaneering International, Inc. (Oceaneering) in the United States District Court for the Southern District of Texas. Specifically, this appeal concerns the validity of contractual forum selection clause and an injunction preventing Oceaneering from further

prosecuting any action against MacPhail in Australia.

Oceaneering presents two issues on appeal: (1) whether the district court abused its discretion when it enjoined Oceaneering from prosecuting its contract claims against MacPhail in Australia; and (2) whether the district court erred when it denied Oceaneering's Motion to Dismiss.


## BACKGROUND

In May of 1998, MacPhail was working as a diver for Oceaneering onboard a dive support vessel, which was operating in the South China Sea off the Coast of China. MacPhail was employed to perform saturation diving, which required him to be "stored" at a depth of approximately 100 feet for a 30-day period.[1] While saturation diving, MacPhail breathed a mixture of helium and oxygen and undertook approximately fifteen "bell runs" in which he descended to a work area on the seabed in a diving bell, exited the bell for several hours and then returned in the bell to the vessel.

On the second bell dive, MacPhail observed oil, mud, and sludge coating the hoses and the inside of the bell. MacPhail

---

[1]Saturation diving is based on the principle that at certain depths and after certain amounts of time have passed, the amount of time it takes to decompress is the same. This is the diver's saturation point. Therefore, divers are placed in a tank, which places the divers under pressure and maintains them at this level of pressure to avoid decompression sickness or "the bends." The divers can then be lowered to the ocean floor through a diving bell and brought back up to the tank, with no ill effects due to decompression sickness.

experienced severe headaches, loss of concentration, and decreased coordination. After the bell returned to the vessel, MacPhail reported his problems to surface management and the interior of the bell was cleaned by the deck crew. MacPhail continued to make his scheduled dives to the bottom but experienced headaches, loss of appetite, nausea, vomiting, and other medical problems. Later analysis of the seabed indicated the mud on the bottom contained toxic levels of arsenic, mercury, cyanide, hydrogen sulfide, and polychlorinated biphenyls.

At the end of his 30-day diving period, MacPhail was brought to the surface and released from the saturation tank. MacPhail was weak, disoriented, and needed medical attention. MacPhail was transported to Hong Kong, where he received one day of medical treatment. He was then transported to Singapore for additional treatment, after which he was returned to Australia, where he resided.[2] MacPhail saw additional doctors in Australia that were provided by Oceaneering. Over the next several months, MacPhail continued to suffer from numerous complications including sleep loss, depression, fainting spells, and headaches. During this time, MacPhail requested that experts in hyperbaric medicine and toxicology examine him. However, Oceaneering told MacPhail it was looking for, but was unable to locate appropriate specialists.

---

[2]MacPhail's Original Complaint below notes that he is "a resident and citizen of Australia."

Eventually, MacPhail was told nothing more medically could be done for him; and the parties negotiated an agreed settlement. Despite being advised by Oceaneering to obtain legal counsel, MacPhail chose not to be represented by counsel during the negotiations and when he signed the Deed of Release and Discharge ("Release").[3]  The Release provided:  "This Deed of Release and Discharge will be governed by and construed in accordance with the laws of Western Australia."  In addition, the Release included a forum selection clause:

> In the event of any dispute in respect of or arising from this Deed of Release and Discharge or any matter relating thereto the parties hereby agree to submit their dispute to the exclusive jurisdiction of the District or Supreme Court of Western Australia, or to the Federal Court of Australia and the parties hereby agree to submit to the exclusive jurisdiction of the said Courts.

In consideration of the Release, MacPhail received $280,000; Oceaneering's commitment to provide him with additional training courses; and a $25,000 escrow fund to cover future medical expenses.[4]  Additionally, on November 5, 1999, MacPhail filed suit against Oceaneering in the District Court of Western Australia, Perth; and that court entered final judgment based on the Consent

_____

[3]In a letter dated November 2, 1999, Oceaneering's counsel advised MacPhail of the proposed settlement agreement and advised, "[w]e would recommend that you obtain legal advice as soon as possible . . . [c]ould you kindly notify us in writing when you have considered the documents and obtained legal advice on the same."

[4]The $25,000 escrow account has since been exhausted.

4

Order between MacPhail and Oceaneering.[5]

In November 2000, MacPhail traveled to the United States for treatment and was diagnosed with various physical abnormalities, including brain and nerve damage, all linked to toxic chemical exposure and decompression sickness. As a result, in September of 2001, MacPhail filed this lawsuit against Oceaneering in the Southern District of Texas, invoking the court's admiralty jurisdiction and claiming seaman status under 46 U.S.C. § 688. Oceaneering filed a Motion to Dismiss based on the Release and its forum selection clause.

On October 17, 2001, the district court issued an Order Denying Oceaneering's Motion to Dismiss. The district court concluded that the forum selection clause in the Release was "unreasonable and therefore unenforceable because its enforcement would violate a strong public policy and because Plaintiff would thereby be deprived of his day in court."

On January 9, 2002, Oceaneering filed a Writ of Summons in the Supreme Court of Western Australia seeking to enforce specific

---

[5]Under Section 9(1)(a) of Australia's Admiralty Act of 1998, Federal Courts, the courts of the Territories and State courts have jurisdiction over *in personam* maritime claims. Under Sections 4(3)(c) and (d), such maritime actions include claims for personal injury sustained as a consequence of a defect in a ship or arising out of an act or omission of the owner of the ship, or a person in possession or control of a ship, or a person for whose wrongful acts or omissions the owner of the ship is liable. *See* DAMIEN J. CREMEAN, ADMIRALTY JURISDICTION: LAW AND PRACTICE IN AUSTRALIA 37-42 (The Federation Press 1997) (discussing Sections 4(3)(c) and (d) of the Admiralty Act of 1988).

performance of the Release.  The Writ commanded MacPhail to make an appearance in the Australian forum within 10 days.  MacPhail, however, was scheduled to travel to the United States in mid-January for further treatment and independent medical examinations.  As a result, MacPhail filed a Motion to Enjoin his admiralty suit in the Southern District of Texas.  In his motion, MacPhail argued that Oceaneering filed the Australian lawsuit to effectively circumscribe the Southern District of Texas' jurisdiction and to interfere with MacPhail's medical treatment.  Oceaneering filed a Motion in Opposition and asked the district court to reconsider its previous Order denying Oceaneering's Motion to Dismiss.  On February 11, 2002, the district court issued an order granting MacPhail's Motion to Enjoin and denied Oceaneering's Motion for Reconsideration.  Oceaneering appeals from that order.

## DISCUSSION

**Issue I: Whether the district court erred when it enjoined Oceaneering from prosecuting its contract claims against MacPhail in Australia.**

### A.  Standard of Review

We review the district court's decision to grant injunctive relief for abuse of discretion.  *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996).  Under this standard, "findings of fact are upheld unless clearly erroneous, whereas legal conclusions are subject to broad review and will be reversed if incorrect."

6

*Id.* (internal quotations omitted).

### B. Analysis

Two factors are relevant to our comity analysis as we evaluate the district court's granting of MacPhail's Motion to Enjoin Oceaneering from prosecuting its action for specific performance in the Supreme Court of Western Australia: whether the foreign litigation is duplicitous and vexatious litigation; and whether the injunction is necessary to protect the court's jurisdiction. *See id*. at 627.

Oceaneering's instituting an enforcement action in Australia is not duplicitous or vexatious. The two suits are not duplicitous. The suit filed by MacPhail in the Southern District of Texas, although arising out of facts contemplated in the Release, is a maritime tort claim alleging substantial injuries. The Australian lawsuit filed by Oceaneering seeks specific performance of the settlement agreement that the Australian court had already approved. Furthermore, Oceaneering's Australian lawsuit is not vexatious. If the District Court of Australia had proper jurisdiction to rule on the validity of the Release, as it already had, it is hard to imagine how seeking enforcement of that ruling would be vexatious.

We reject MacPhail's argument that the district court had to issue the injunction to protect its jurisdiction. Whether or not the District Court for the Southern District of Texas has

7

jurisdiction of this case is a function of whether or not the Australian court had jurisdiction of the suit filed by MacPhail to secure that court's approval of his original settlement agreement and release with Oceaneering. The District Court of Western Australia established prima facie jurisdiction when it approved the Release and the settlement between Oceaneering and MacPhail long before the Southern District of Texas enjoined Oceaneering from proceeding with its lawsuit in Australia. Furthermore, nothing in the record suggests MacPhail will be barred from arguing the validity of the Release and the forum selection clause in the Australian forum. Accordingly, we find that the district court abused its discretion when it enjoined Oceaneering; and we **VACATE** the district court's order granting MacPhail's Motion to Enjoin and denying Oceaneering's Motion for Reconsideration.

**Issue II: Whether the district court erred when it denied Oceaneering's Motion to Dismiss MacPhail's suit in contravention of the forum selection clause.**

**A. Standard of Review**

The enforcement of a forum selection clause is an issue of law, and we review the district court's conclusions of law *de novo*. *Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 301 (5th Cir. 1998). Further, we review *de novo* a district court's determination that a contract clause is unenforceable based on public policy grounds. *Fidelity & Deposit Co. v. Connor*, 973 F.2d 1236, 1241 (5th Cir. 1992). This Court has held, however, that federal courts

8

must presumptively uphold forum selection clauses in international transactions.  *Haynesworth v. Corporation*, 121 F.3d 956, 962 (5th Cir. 1997).  Therefore, we review the district court's denial of Oceaneering's Motion to Dismiss *de novo*.

**B.  Analysis**

For some of the same reasons stated above in Issue I, we conclude the district court's order denying Oceaneering's Motion to Dismiss must be vacated.  However, given the posture of this case, we **REMAND** this proceeding to the Southern District of Texas with instructions to hold this case in abeyance pending a judgment by the Supreme Court of Western Australia concerning the negotiated settlement.  If the Australian court grants Oceaneering's suit to enforce the prior settlement agreement made in that court, then the district court will dismiss this admiralty proceeding with prejudice.  If the Australian court sets aside the settlement agreement for any reason, then the district court will restore this case to its active docket and determine whether it has jurisdiction over MacPhail's claims under the theories asserted in his petition.

**CONCLUSION**

Having carefully reviewed the record in this case and the parties' briefing and for the above reasons, we conclude the district court abused its discretion when it enjoined Oceaneering from pursuing its action for specific performance in the Supreme

9

Court of Western Australia. We **VACATE** the district court's order granting MacPhail's Motion to Enjoin and Oceaneering's Motion for Reconsideration.  Further, we **STAY** the district court proceedings pending judgment by the Australian court.  We **REMAND** this case to the district court for proceedings consistent with this opinion.

**VACATED in part, STAYED, and REMANDED.**