832 So.2d 314 (2002)
Dimitrios KERAMIDAS
v.
PROFILE SHIPPING LIMITED and Steamship Mutual Underwriting Association Limited.
No. 00-CA-1852.
Court of Appeal of Louisiana, Fifth Circuit.
October 16, 2002.
*315 Richard K. Leefe, Leefe, Gibbs, Sullivan, Dupre & Aldous Metairie, LA, Attorneys for Appellants.
Charles F. Lozes, L.R. DeBuys, IV, New Orleans, LA, Attorneys for Appellees.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA and CLARENCE E. McMANUS.
JAMES L. CANNELLA, Judge.
This case was remanded by the Louisiana Supreme Court to reconsider our opinion in Keramidas v. Profile Shipping Ltd., 00-1852 (La.App. 5th Cir.4/11/01), 785 So.2d 1004 in light of Sawicki v. K/S Stavanger Prince, 01-0528 (La.12/7/01), 802 So.2d 598. On reconsideration, we reverse our prior ruling and reverse the summary judgment granted by the trial judge in favor of the Defendants.
Keramidas v. Profile Shipping Ltd., 00-1852 (La.App. 5th Cir.4/11/01), 785 So.2d 1004 was the second appeal in this maritime personal injury case brought by the Plaintiffs, Anastasia Barola, her minor son, Periklis Keramidas, and George Evdoxiadis, Executor of the Estate of Dimitrios Keramidas (Decedent), a citizen of Greece. The appeal was from a summary judgment granted to the Defendants, Profile Shipping Limited (Profile) and Steamship Mutual Underwriting Association Limited (Steamship). In the first appeal, we did not reach the merits, but remanded the case to the district court for procedural reasons. In that decision, we stated the facts as follows:
Keramidas was a Greek seaman who became sick aboard his ship while it was docked in St. Charles Parish in January of 1999. He was provided medical treatment *316 for sepsis at East Jefferson General Hospital in Metairie, Louisiana. On March 8, 1999, suit was filed on his behalf under maritime law and the Jones Act. Keramidas received considerable medical treatment at East Jefferson General Hospital for two months as his condition deteriorated. While still extremely ill, but with medical approval, Keramidas was then transported back to Greece. Keramidas never recovered from his illness and died in Athens, Greece on May 26, 1999. The death certificate states that the death was caused by "Marked myocardial degeneration, peritoNitis (sic) due to large bowel rupture."
Keramidas v. Guise Shipping Enterprises Corp., 99-1133 (La.App. 5th Cir.2/29/00), 757 So.2d 822.
In response to the lawsuit, the Defendants filed their Motion for Summary Judgment.[1] They contended that the forum selection clause of the seaman's employment agreement precluded a suit in the United States because it provides for suits to be brought in the country of Cyprus. The trial judge granted the motion. We affirmed the decision on appeal. Subsequently, the Louisiana Supreme Court granted a writ of certiorari and remanded the matter to this court to reconsider our decision in light of Sawicki, which was rendered after our decision, but before consideration of the Keramidas' writ application in the Louisiana Supreme Court.
In Sawicki, a Polish seaman was injured while serving aboard a vessel owned by a Norwegian partnership. He sued the partnership and its insurer because of its negligence or intentional tort, alleging that he sustained an eye injury in 1995 while working on an engine. The trial judge granted the Defendants' motion for partial summary judgment on the basis of a forum selection clause in the employment contract and dismissed the seaman's petition. The court of appeal affirmed. The Louisiana Supreme Court reversed and remanded, holding that La. R.S. 23:921A(2), enacted in 1999, prohibits the enforcement of forum selection clauses contained in employment contracts or collective bargaining agreements, that the statute applies to maritime cases, that it is to be applied prospectively and retroactively, and that it does not violate either the state or federal constitutional prohibitions against impairment of contracts.
The Plaintiffs assert that the Sawicki case is on point and mandates a reversal of our prior holding. The Defendants respond that the statute cannot be applied constitutionally under the Commerce Clause of the United States Constitution, that the state does not have a strong public policy to prohibit foreign parties from signing foreign employment contracts and that the statute is substantive and cannot be applied retroactively.
La. R.S. 23:921 A(2) provides:
(2) The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence *317 of the incident which is the subject of the civil or administrative action.
First, the Louisiana Supreme Court found that the statute can be applied to maritime forum selection clauses in a seaman's employment contract. In Sawicki, the Court held that:
This court finds that La.Rev.Stat. 23:921A(2) is applicable to the forum selection clause in the instant matter.... As stated supra, the United States Supreme Court in M/S Bremen held that forum selection clauses will be upheld unless they contravene strong public policy of the forum in which the suit is brought. La.Rev.Stat. 23:921A(2) is an expression of strong Louisiana public policy concerning forum selection clauses. Further, the enforcement of the statute in admiralty cases is in harmony with federal law as enunciated in M/S Bremen.[2] [Footnote added]
Sawicki, 802 So.2d at 603.
In the Court's conclusion of the decision, it held that:
Louisiana Revised Statute 23:921A(2) is a strong expression of Louisiana public policy concerning forum selection clauses wherein the legislature clearly intended to allow Louisiana courts to adjudicate the claims of Plaintiffs who have properly invoked their jurisdiction. Thus, suits validly filed in this state can remain here, despite forum selection clauses to the contrary unless the clause was expressly, knowingly, and voluntarily entered into and ratified after the occurrence of the incident which gives rise to the litigation. The legislature has expressed Louisiana's strong policy with a legitimate concern for providing justice to those parties who would otherwise be entitled to adjudication in a Louisiana court. [Emphasis added]
Sawicki, 802 So.2d at 606
Second, the Court considered the question of the retroactive application of the statute. Sawicki's case arose prior to the effective date of the statute, as did the case herein. The Court held that the statute should be applied retroactively and prospectively, stating:
The portion ... of Louisiana Revised Statute 23:921A(2) concerning the enforceablity [sic] ... does not establish new rules, rights or duties, nor does it clarify the meaning or interpretation of the statute. The enactment does not change or alter Plaintiff's cause of action but merely affects the process for judicial assertion of a substantive claim, i.e., the forum in which the claim can be adjudicated. Thus, it is procedural under the foregoing definitions. Further ... "the validity and interpretation of forum selection clauses may well be regarded as a procedural matter that is entirely controlled by state law." Lejano, 705 So.2d at 164. This ... is supported by federal jurisprudence ... Because we have found no legislative expression regarding prospective or retroactive application of that portion of La.Rev.Stat. 23:921A(2) concerning the enforceability of forum selection clauses, and have deemed that provision to be procedural, it applies both prospectively and retroactively.
The Court then discussed the effect of the statute on the due process and contract clauses of the United States and Louisiana Constitutions, noting that a law cannot be applied retroactively if it impairs contractual obligations or disturbs vested *318 rights. Sawicki, 802 So.2d at 604. The Court found that retroactive application of the portion of La.Rev.Stat. 23:921A(2) concerning the enforceability of forum selection clauses does not disturb vested rights, as it does not meet the definition of a vested right and is procedural in nature, and no one has a vested right in "any given mode of procedure." Sawicki, 802 So.2d at 604-605.[3]
Next, using the "four-step" analysis set out in Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281, 286 (La.1986), the Court concluded that it did not impair the contract between the Plaintiff and his Norwegian employer in violation of the United States and Louisiana Constitutions. Under that four-step analysis, the Court must first determine whether the state law would, in fact, impair a contractual relationship and, if so, whether the impairment is of constitutional dimensions. Third, if the state regulation is a substantial impairment, the Court must determine whether a significant and legitimate public purpose justifies the regulation and, if one exists, whether the adjustment of the rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 410-13, 103 S.Ct. 697, 704-05, 74 L.Ed.2d 569; Board of Comm'rs, 496 So.2d at 292-93; Sawicki, 802 So.2d at 605.
After considering these factors, the Louisiana Supreme Court concluded that, even if the retroactive application of the statute creates a contract impairment of constitutional dimensions, it does not violate the contract clauses of the United States or Louisiana Constitutions. First, there is no constitutional bar to its retroactive application because the statute is a strong expression of Louisiana's public policy and evidences a legitimate concern for providing justice to those parties who would otherwise be entitled to adjudication in a Louisiana court. Sawicki, 802 So.2d at 606. Thus, the purpose justifies the regulation and responsibilities of the contracting parties. Furthermore, the regulation is based upon reasonable conditions and it is of a character appropriate to the public purpose justifying the legislation's adoption. Id. The statute contains a reasonable condition that forum selection clauses be expressly, knowingly and voluntarily entered into and ratified after the occurrence of injury, and that condition is appropriately geared toward Louisiana's public policy decision to allow its state courts to adjudicate claims brought within its jurisdiction. Sawicki, 802 So.2d at 606.
The Sawicki decision is on point in this case. We find that it disposes of the Defendants' arguments. Since we are bound by its holdings, we must reverse our initial ruling. Furthermore, although the issue of whether the application of the statute violates the Commerce Clause of the United States Constitution was not addressed in Sawicki, it is implicit in Sawicki that there is no constitutional bar to the application of this statute to maritime contracts of employment. We also find that it is not properly before this court because Defendants have raised this for the first time here in response to the action of the Louisiana Supreme Court. It *319 should have been raised in a motion for rehearing following the Louisiana Supreme Court's decision in this case.
Accordingly, we reverse the summary judgment granted to the Defendants by the trial judge dismissing the Plaintiff's action and our prior ruling affirming the trial court judgment. The case is remanded for further proceedings. Costs of appeal are assessed against Defendants.
REVERSED AND REMANDED.
NOTES
[1] The motion was filed on June 24, 1999.
[2] M/S Bremen v. Zapata Off-Shore Company, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).
[3] "A vested right is defined as that case when `the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit ... does not constitute a vested right.'" Sawicki, 802 So.2d at 604 [Citation omitted]