Eric **BOUTTE**, Plaintiff,

v.

**CENAC TOWING, INC.,** Defendant.

No. CIV.A. G–03–1054.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 16, 2004.

Francis I. Spagnoletti, Spagnoletti & Assoc., Houston, TX, for Plaintiff.

## *ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION*

KENT, District Judge.

This is a Jones Act case brought pursuant to this Court's admiralty jurisdiction. Plaintiff Eric Boutte ("Plaintiff") brings this action against Cenac Towing, Inc. ("Defendant") for injuries he sustained while working aboard Defendant's vessels.

On September 20, this Court issued an Order denying Defendant's Motion to Dismiss under Fed.R.Civ.P. 12(b)(3) or, in the Alternative, Motion to Transfer Venue ("Order"). Now before the Court is Defendant's Motion for Reconsideration of that Order. For the following reasons, Defendant's Motion for Reconsideration is **DENIED**.

### I.

Defendant, a Louisiana corporation with its principal place of business in Louisiana, hired Plaintiff, a Louisiana resident, to work on its vessels as a deckhand. As a condition of employment, Plaintiff executed a Choice of Forum Agreement on June 26, 2003, designating Louisiana as the appropriate forum for any lawsuits arising out of his employment. On October 24 or 25, 2003, Plaintiff allegedly injured his elbow while performing his duties aboard the M/V GENIE CENAC, which was on the Ohio River in Kentucky. On December 2, 2003, Plaintiff allegedly aggravated his elbow injury and suffered additional injuries while performing his duties aboard the M/V URSULA CENAC, which was in Freeport, Texas. Defendant owns and operates both vessels.

Plaintiff filed this lawsuit on December 30, 2003. Defendant answered on March 3, 2004. In its answer, Defendant specifically reserved its objections to this Court's venue and averred its intention to file a motion to transfer venue and a memorandum in support thereof. On March 17, 2004, this Court entered a Docket Control Order, setting the case for trial on February 14, 2005. On July 2, 2004, Defendant filed its Motion to Dismiss under Fed. R.Civ.P. 12(b)(3) or, in the alternative, Motion to Transfer. After receiving a brief extension, Plaintiff filed its Response on August 5, 2004.

This Court denied Defendant's Motions on September 20, 2004. Defendant filed its Motion for Reconsideration on October 14. Plaintiff filed its Response on November 4.

## II.

### A. Defendant's Motion to Dismiss under Fed.R.Civ.P. 12(b)(3)

Defendant moves this Court to reconsider its Order denying Defendant's Motion to Dismiss. Defendant argued that this case should be dismissed pursuant to Fed. R.Civ.P. 12(b)(3) because of the choice of forum agreement between the parties. Rule 12(b)(3) allows a party to move to dismiss a case for improper venue. This Court denied Defendant's Motion.

■ Although Plaintiff is suing under the Jones Act, 46 U.S.C. § 688, he is not asserting federal question jurisdiction as the basis for subject matter jurisdiction in this Court. Rather, he is invoking this Court's admiralty jurisdiction, under Fed. R.Civ.P. 9(h). Therefore, the venue provisions for Jones Act cases do not apply. *See Richoux v. R & G Shrimp Co.*, 126 F.Supp.2d 1007, 1009 n. 1 (S.D.Tex.2000) ("The venue provisions of the Jones Act . . . do not apply to cases brought on the admiralty side of federal court."). This Court must determine whether venue is proper using the rules of venue particular to admiralty.

■ In an admiralty case, venue is proper in any court with personal jurisdiction over the defendant. *See In re McDonnell–Douglas Corp.*, 647 F.2d 515, 516 (5th Cir.1981) ("[T]he general admiralty practice prevails, in which venue and personal jurisdiction merge."); *Richoux,* 126 F.Supp.2d at 1009 ("[F]or claims in admiralty, venue lies wherever a district court has jurisdiction over the defendant."). In considering Defendant's Mo-

tion to Dismiss, this Court determined that it had personal jurisdiction over Defendant because the acts of which Plaintiff complains occurred here. *See* Order at 3–4. Plaintiff asserts that he was injured on December 2, 2003, while the URSULA CENAC was in Freeport, Texas. Defendant's records bear this out. According to Exhibit 2C of Defendant's Motion to Dismiss or, Alternatively, Motion to Transfer, the URSULA CENAC arrived at Equistar Chocolate Bayou in Freeport, Texas, at 9:45 a.m. on December 2, 2003. It docked at 10:00 a.m., discharged until 10:00 p.m., and departed at 11:00 p.m. Plaintiff alleges that the URSULA CENAC was unseaworthy and that Defendant was negligent during this time. Because this Court has personal jurisdiction over Defendant, venue is proper here, under traditional admiralty law. Defendant has not shown any reason why this Court should overrule its Order denying the Motion to Dismiss. Therefore, Defendant's Motion for Reconsideration of its Motion to Dismiss is respectfully **DENIED**.

### B. Defendant's Motion to Transfer

#### 1. 28 U.S.C. § 1406(a)

Defendant moved to transfer this case to the Eastern District of Louisiana under 28 U.S.C. § 1406(a). Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). As previously discussed, venue in the Southern District of Texas is not wrong, although venue may also properly lie elsewhere. Defendant has not shown any reason why this Court should overrule its Order denying Defendant's Motion to Transfer under 28 U.S.C. § 1406(a). Therefore, Defendant's Motion

for Reconsideration of its Motion to Transfer under 28 U.S.C. § 1406(a) is respectfully **DENIED**.

### 2. 28 U.S.C. § 1404(a)

Defendant alternatively sought a discretionary transfer to the Eastern District of Louisiana pursuant to 28 U.S.C. § 1404(a). This statute provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Defendant argued that transfer was appropriate in light of the choice of forum agreement. In its Order, this Court found the choice of forum agreement to be enforceable, but declined to transfer because the location of the alleged wrong and the delay to Plaintiff resulting from a transfer favored retention. Defendant moves for reconsideration on the basis that Plaintiff will not be prejudiced by a transfer. Plaintiff argues that the choice of forum agreement is unenforceable.

### a. Validity of Choice of Forum Agreement

■ Before this Court can consider a choice of forum agreement in its transfer analysis, it must determine whether it is enforceable. See Speed, 246 F.Supp.2d at 672. A choice of forum agreement is unenforceable if (1) enforcement of the clause would effectively prevent the plaintiff from having his day in court; (2) the forum agreement was procured by overreaching or fraud; or (3) the Court's enforcement of the forum selection clause would violate a strong public policy. See id.

The choice of forum agreement between Plaintiff and Defendant consists of a single sheet of paper. It is titled, appropriately, "Choice of Forum Agreement" ("Agreement"). In it, Plaintiff agrees to file suit only in Louisiana. The middle of the page contains a paragraph which states, in bold type: "I SPECIFICALLY AGREE THAT I WILL NEVER FILE A SUIT FOR PERSONAL INJURY AGAINST CENAC TOWING, INC. IN A STATE OR FEDERAL COURT LOCATED OUTSIDE THE STATE OF LOUISIANA, INCLUDING THE STATE OF TEXAS." The Agreement is signed by the Plaintiff and two witnesses and is dated June 26, 2003.

In its Response to Defendant's Motion to Transfer Venue, Plaintiff did not claim that enforcement of the Agreement would deny Plaintiff his day in Court or that it was procured by overreaching or fraud. Rather, Plaintiff alleged that enforcement of the Agreement would violate the strong public policy of protecting seamen. In the Order, this Court rejected Plaintiff's argument and found the Agreement to be enforceable because of the Fifth Circuit's decision in *Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216 (5th Cir.1998). In *Marinechance,* the Fifth Circuit held that a forum selection clause in a seaman's employment contract was fair and enforceable. *Id.* at 221 ("[T]he forum selection clause is fundamentally fair. We find, then, that the forum selection clauses in the seamen's contracts are enforceable.").

In its Response to Defendant's Motion for Reconsideration, Plaintiff renews its claim that the Agreement is unenforceable because it violates a strong public policy of this Court. Plaintiff argues that the Jones Act incorporates the Federal Employers Liability Act, 45 U.S.C. §§ 51–60 ("FELA"), and that choice of forum agreements are unenforceable under FELA. Therefore, choice of forum agreements should not be enforceable in Jones Act claims. Plaintiff submits that *Marinechance* does not apply to American seamen asserting Jones Act claims and thus the

portion of the Order upholding the validity of the Agreement was in error. For the following reasons, this Court agrees.

██ Forum selection clauses in maritime contracts are presumptively enforceable. The starting point for any discussion of forum selection clauses in maritime contracts is *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In *Bremen,* a Houston-based American company, Zapata, contracted with a German corporation, Unterweser, to tow a drilling rig from the coast of Louisiana to the Mediterranean Sea. The contract contained a forum selection clause designating the London Court of Justice as the appropriate forum for any dispute arising from the contract. A severe storm damaged the drilling rig while it was in international waters, and Zapata instructed Unterweser to tow it to Tampa, Florida, the nearest port of refuge. Zapata then filed suit in admiralty in U.S. District Court in Tampa against Unterweser and The Bremen, Unterweser's deep sea tug, for breach of contract and negligent towing. The District Court declined to enforce the forum selection clause, and the Circuit Court affirmed.

Noting that the forum selection clause at issue was a "freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power," the Supreme Court held that "the forum clause should control absent a strong showing that it be set aside." *Id.* at 15, 92 S.Ct. at 1916. The Supreme Court also stated that forum selection clauses in commercial maritime contracts are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10, 92 S.Ct. at 1913. However, the Supreme Court announced an important exception to the prima facie validity of choice of forum agreements-they will not be enforced if doing so would violate "a strong public policy of the forum, whether declared by statute or judicial decision." *Id.* at 15, 92 S.Ct. at 1916.

In *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the Supreme Court expanded its holding in *Bremen* to include maritime contracts involving consumers. In *Carnival Cruise,* a married couple bought cruise tickets from a travel agent in their home state of Washington. After paying for the cruise, they received their tickets. On the backs of the tickets, in fine print, was a forum selection clause designating Florida as the appropriate venue for any disputes. Carnival Cruise Lines, Inc. ("Carnival") had its principal place of business in Florida. The wife slipped and fell while the vessel was in international waters off the coast of Mexico. She and her husband sued Carnival in Washington.

Relying on *Bremen,* the Supreme Court held that the forum selection clause was enforceable despite the fact that the tickets were nonrefundable and the forum selection clause was not the product of bargaining. *See id.* at 595, 111 S.Ct. at 1528. The Supreme Court reasoned that the cruise line had an interest in "limiting the fora in which it could be potentially subject to suit." *Id.* at 593, 111 S.Ct. at 1527. Because cruise ships typically carry passengers from many different states and countries, an accident could subject the cruise line to litigation in multiple locales. *See id.* Also, enforcing the forum selection clause would avoid confusion about the proper venue. *See id.* at 593–94, 111 S.Ct. at 1527. The parties would know in advance where to file suit. *See id.* This would conserve judicial resources. *See id.* at 593–94, 111 S.Ct. at 1527. Finally, passengers benefit from forum selection claus-

es in the form of lower ticket prices. *See id.*

The Fifth Circuit expanded *Bremen* and *Carnival Cruise* to include forum selection clauses in seamen's employment contracts in *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir.1998). In *Marinechance*, two Filipino seamen were injured aboard the M/V ELLISPONTOS while in navigable waters of the Mississippi river. Marinechance, a Cypriot corporation, filed suit in federal court seeking a declaratory judgment that any litigation arising from the accident must proceed in the Philippines. Marinechance invoked the forum selection clauses in the seamen's contracts. The employment contracts were approved by an arm of the Filipino government, the Philippine Overseas Employment Administration ("POEA"). The employment contracts also incorporated a treaty between the Republic of the Philippines and the Republic of Cyprus regarding the employment of Philippine and Cypriot seamen. The treaty requires that all disputes arising out of seamen's employment contracts be litigated "in the country of the seaman's nationality where the contract of employment was signed and approved." *Id.* at 220.

The trial court held that the forum selection clause was enforceable. On appeal, the Fifth Circuit affirmed, comparing the POEA forum selection clause to the one in *Carnival Cruise:*

> The similarities between the present case and *Carnival Cruise Lines* are many. The contracts of employment of seamen aboard international vessels are routine; the seamen individually do not have much bargaining power. The selection of a forum in advance reduces the vessel owner's exposure to suits in forums all over the world. Furthermore, it informs the seamen of where their causes of action can be maintained.

Where this case departs from *Carnival Cruise Lines* is that the forum selection clause was imposed by an arm of the Philippine government rather than by either party. This distinction does not alter the fact that the forum selection clause is fundamentally fair. We find, then, that the forum selection clauses in the seamen's contracts are enforceable.

*Marinechance,* 143 F.3d at 221 (internal citations omitted).

■ Despite this seemingly overwhelming authority, Plaintiff maintains that the Agreement is unenforceable because it violates the strong public policy of protecting Jones Act seamen. The Jones Act, 46 U.S.C. § 688, provides a cause of action for a seaman injured in the course of his employment by the negligence of his employer, the ship's master, or fellow crew members. *See* Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 4–20 (4th ed.2004). Its purpose is to provide for "the benefit and protection of seamen who are peculiarly the wards of admiralty." *The Arizona v. Anelich,* 298 U.S. 110, 123, 56 S.Ct. 707, 711, 80 L.Ed. 1075 (1936). It should be liberally construed to enlarge the protection afforded to seamen under general maritime law. *See id.* The Jones Act provides in relevant part:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply . . .

46 U.S.C.App. § 688. The Jones Act does not "specifically enumerate the rights of seamen, but merely extend[s] to them the same rights granted to railway employees by the Federal Employers' Liability Act." *Cox v. Roth,* 348 U.S. 207, 209, 75 S.Ct.

242, 243, 99 L.Ed. 260 (1955). Although the text of the Jones Act incorporates only FELA statutes, the Supreme Court has held that FELA common law also applies to Jones Act cases. *See Kernan v. Am. Dredging Co.,* 355 U.S. 426, 439, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958) ("[The Jones Act] expressly provides for seamen the cause of action-and consequently the *entire judicially developed doctrine of liability,* granted to railroad workers by the FELA.") (emphasis added).

FELA provides a cause of action to railroad workers injured due to the negligence of their employer. *See* 45 U.S.C. § 51. To enable injured railway workers to recover from the railroads, Congress prohibited employers from exempting themselves from FELA through contract. *See* 45 U.S.C. § 55. FELA allows an injured worker to bring suit in the district in which his employer resides, in which the cause of action arose, or in which his employer does business at the time the cause of action arose. *See* 45 U.S.C. § 56.

In *Boyd v. Grand Trunk Western Railroad Co.,* 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949) (per curiam), the Supreme Court considered the validity of a forum selection agreement in a FELA claim. Boyd, an injured railroad worker, received two advances of $50 each from his employer. As part of the advances, Boyd had to sign agreements waiving his right to sue in any forum other than where he lived or where he received his injuries. When they could not settle the claim, Boyd sued in the Cook County, Illinois state court, which was not one of the previously agreed upon fora. On appeal, the Supreme Court held that FELA's jurisdictional provision, 45 U.S.C. § 56, conferred upon injured railway workers a "substantial right" to select the forum. *Id.* at 266, 70 S.Ct. at 28. The Court then analyzed the section prohibiting employers from exempting themselves

from FELA by contract, 45 U.S.C. § 55, and determined that enforcing the forum selection clause would enable the employer to exempt itself from FELA liability. *See id.* at 265, 70 S.Ct. at 27 ("We hold that petitioner's right to bring the suit in any eligible forum is a right of sufficient substantiality to be included within the Congressional mandate of [45 U.S.C. § 55]."). Because the forum selection clause enabled the employer to exempt itself from FELA liability, it would not be enforced. *See id.* at 266, 70 S.Ct. at 28 ("The right to select the forum granted in [45 U.S.C. § 56] is a substantial right. It would thwart the express purpose of the Federal Employers' Liability Act to sanction defeat of that right by the device at bar."). Therefore, the Court held that the forum selection clause was "void." *Id.* at 265, 70 S.Ct. at 27.

The issue of whether forum selection clauses in Jones Act cases are enforceable under *Boyd* is an issue of first impression in this Circuit. *Marinechance* clearly held that the forum selection clauses in the seamen's employment contracts were enforceable. However, there is an international flavor present in *Marinechance* that is absent in this case. The seamen in *Marinechance* were Filipino; the Filipino government negotiated their employment contracts on their behalf; and there was a treaty between the Republic of the Philippines and the Republic of Cyprus providing that Filipino seamen's employment disputes be litigated in the Philippines. Even construed liberally, *Marinechance* does not purport to bind American seamen working on American vessels asserting Jones Act claims.

Furthermore, there is another important difference between *Marinechance* and this case. The forum selection agreements at issue in *Marinechance* had the imprimatur of the Filipino government. The choice of

forum agreement signed by Plaintiff is unenforceable under Louisiana law. In 1999, Louisiana amended its code to add the following:

> The provisions of every employment contract or agreement ... by which any foreign or domestic employer ... includes a choice of forum clause ... in an employee's contract of employment or collective bargaining agreement, or attempts to enforce ... a choice of forum clause ... in any civil ... action involving an employee, shall be null and void except where the choice of forum clause ... is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil ... action.

La.Rev.Stat. Ann. § 23:921(a)(2). Louisiana courts have not hesitated to apply this statute to vitiate forum selection clauses in seamen's employment contracts. *See Sawicki v. K/S Stavanger Prince,* 802 So.2d 598, 602 (La.2001) (applying Section 23:921(a)(2) to strike down a forum selection clause in Polish seaman's collective bargaining agreement designating either Norway or Poland as the appropriate venue); *Keramidas v. Profile Shipping Ltd.,* 832 So.2d 314, 318–19 (applying Section 23:921(a)(2) to strike down a forum selection clause in Greek seaman's employment contract designating Cyprus as the appropriate venue). It is uncertain whether *Marinechance* would have come out differently had Filipino law disapproved of the forum selection clauses, but it is clear that the Fifth Circuit gave weight to the fact that the clauses at issue had the blessing of the Filipino government. *See Marinechance,* 143 F.3d at 221, 221 n. 24 (finding that forum selection clause was "fundamentally fair" and included "to protect Philippine seamen").

Putting aside the Louisiana statute invalidating choice of forum clauses in employment contracts, there is clearly a presumption in general maritime law that forum selection clauses are enforceable. However, the Jones Act specifically incorporates FELA, and forum selection clauses are impermissible under FELA. Finding itself at sea, this Court looks to other cases for guidance.

Plaintiff argues that this Court should follow the reasoning in *Nunez v. American Seafoods,* 52 P.3d 720 (Alaska 2002). In *Nunez,* a seaman filed a Jones Act claim against his employer in the Alaska Superior Court at Dillingham. The employer moved to dismiss on the basis of a forum selection clause in the seaman's employment contract designating the United States District Court for the Western District of Washington at Seattle as the appropriate venue. The trial court upheld the forum selection clause and dismissed the case without prejudice to refile in the U.S. District Court in Seattle. On appeal, the seaman argued that choice of forum agreements are unenforceable in FELA claims and the Jones Act incorporates FELA; therefore, choice of forum agreements are unenforceable in Jones Act claims. The employer argued that the forum selection clauses were enforceable in general maritime law under *Bremen* and *Carnival Cruise Lines.* The Alaska Supreme Court reversed the trial court and invalidated the forum selection clause:

> We find [Plaintiff]'s arguments to be more persuasive. *Carnival Cruise Lines* and *M/S Bremen* undeniably recognize that a strong presumption of validity attaches to forum selection clauses under general maritime law. But [Plaintiff] filed his complaint under the saving to suitors clause and the Jones Act, not under general maritime law.

*Id.* at 721. The court distinguished *Marinechance* and its progeny:

> [T]hese cases are inapposite, for they involve foreign sailors who were employed by foreign shippers, served on foreign flagged vessels, and were employed under contracts that called for resolution of their legal disputes in other nations; thus, these cases address problems of uniformity and comity that are unique to their international settings and do not purport to apply-or even to meaningfully consider-the Jones Act or the continued vitality of *Boyd.*

*Id.* at 723–24.

This Court has found one case upholding a forum selection clause in a Jones Act claim despite *Boyd.* In *Acosta v. Norwegian Cruise Line, Ltd.,* 303 F.Supp.2d 1327 (S.D.Fla.2003), a Filipino cruise ship worker brought a Jones Act claim against his employer in state court. The employer removed to federal court pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201—208. The employer then sought to compel arbitration under the terms of the seaman's employment contract. Like the employment contracts in *Marinechance,* the plaintiff's employment contract was approved by the POEA. Although there was no express arbitration provision, the employer argued that the forum selection clause was in fact an arbitration provision. Under the POEA forum selection clause, all disputes are to be litigated through the POEA or Philippines' National Labor Relations Commission ("NLRC"). The court reasoned that the NLRC is a body of labor arbiters, so the forum selection clause is also an arbitration provision. The plaintiff argued that the arbitration agreement was invalid under *Boyd* because it would abrogate his Jones Act remedies. The employer argued that foreign forum selection clauses

have been upheld and that judicial policy favors arbitration of disputes. The court enforced the forum selection/arbitration agreement but did not address the issue of whether *Boyd* invalidated forum selection or arbitration agreements for domestic seamen asserting Jones Act claims. *See id.* at 1331.

There are a handful of other cases addressing the validity of forum selection clauses in Jones Act claims, but none of them address *Boyd.* In *MacPhail v. Oceaneering International, Inc.,* 302 F.3d 274 (5th Cir.2002), a diver brought Jones Act claims against his employer for injuries resulting from exposure to high concentrations of toxic chemicals including mercury, arsenic, and cyanide. After becoming sick but before filing suit, the diver settled his claim with his employer and executed a Release. The Release contained a choice of forum clause designating Australia as the sole forum for any subsequent disputes. When the diver sued in the United States, his employer sued in Australia seeking specific performance of the Release. The Fifth Circuit vacated this Court's order denying the employer's motion to dismiss, noting that "federal courts must presumptively uphold forum selection clauses in international transactions." *Id.* at 278. *MacPhail* is distinguishable from the present case because it involves an international dispute, not a purely domestic one.

In *Smith v. Teco Ocean Shipping, Inc.,* No. Civ. A. 04–0445, 2004 WL 1638111 (E.D.La. July 20, 2004), the court enforced a forum selection clause in a Jones Act claim. In this case, the forum selection clause was part of a benefits package provided to the plaintiff after his injury. The court reasoned that the benefits package was in the form of a release rather than part of the employment contract, so the Louisiana statute prohibiting enforcement

of forum selection agreements did not apply. This case is distinguishable because the forum selection clause was part of a post-accident settlement, not part of the seaman's pre-accident employment contract.

Other cases enforcing forum selection clauses in Jones Act claims all involve foreign seamen. *See Sabocuhan v. Geco-Prakla,* 78 F.Supp.2d 603 (S.D.Tex.1999) (dismissing Jones Act claim of Filipino seaman on basis of POEA-approved forum selection clause); *Valle v. Chios Venture Shipping,* No. Civ. 98–0748, 1999 WL 76429 (E.D.La. Feb.8, 1999) (dismissing Jones Act claim of Nicaraguan seaman because valid forum-selection clause specified Greece as the proper forum); *Damigos v. Flanders Compania Naviera, S.A.-Panama,* 716 F.Supp. 104 (S.D.N.Y.1989) (dismissing Jones Act claims under doctrine of *forum non conveniens* where seamen were Greek, vessel bore flag of Greece, seamen's collective bargaining agreement contained enforceable forum selection clause designating Greece as the appropriate venue, and incident giving rise to claim occurred off the coast of Nigeria); *Lejano v. K.S. Bandak,* 705 So.2d 158 (La. 1997) (dismissing Filipino seaman's Jones Act claim on basis of POEA-approved forum selection clause); *Sanchez v. Commodore Cruise Lines, Ltd.,* 713 So.2d 572 (La.Ct.App.1998) (dismissing Honduran seaman's Jones Act claim on basis of valid forum selection clause).[1]

 To determine whether enforcement of the Agreement would violate a strong public policy of the forum, this Court must determine whether *Boyd* is still viable in light of *Bremen* and *Carnival Cruise Lines.* This Court concludes that it is. In *Bremen,* the Supreme Court articulated a public policy exception to the

prima facie validity of forum selection clauses and cited *Boyd* as an example, affirming its vitality. *See Bremen,* 407 U.S. at 15, 92 S.Ct. at 1907 ("A contractual choice of forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision. *See, e.g., Boyd v. Grand Trunk W.R. Co.,* 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949)."). The *Bremen* court was careful to note that its holding was limited to federal courts exercising their admiralty jurisdiction. *See id.* at 10, 92 S.Ct. at 1913 ("This view ... that [forum selection] clauses are prima facie valid .... is the correct doctrine to be followed by federal district courts *sitting in admiralty.*") (emphasis added). If *Boyd*'s holding were limited to FELA claims, the Court would not have cited it as an example of a public policy exception. Also, Congress intended that the Jones Act supplement the general maritime law by providing seamen with a negligence cause of action against their employers. Provisions of general maritime law which conflict with the Jones Act must yield to it. Congress specifically provided for FELA to apply to Jones Act cases. *See* 46 U.S.C.App. § 688. The Supreme Court held that the Jones Act incorporates not only the FELA statutes but also its "entire judicially developed doctrine of liability." *Kernan v. Am. Dredging Co.,* 355 U.S. 426, 439, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958). The Supreme Court held that forum selection clauses are unenforceable in FELA claims. *See Boyd,* 338 U.S. at 266, 70 S.Ct. at 28. The Supreme Court affirmed *Boyd*'s vitality in *Bremen.* Therefore, *Boyd*'s holding, that forum selection clauses are unenforceable in FELA claims, must apply in some manner to Jones Act

---

1. *Lejano* and *Sanchez* were decided before Louisiana enacted Section 23:921(a)(2), which invalidates forum selection clauses in employment contracts.

claims. The only question, in light of *Marinechance* and *MacPhail,* is how.

■ The plaintiffs in *Marinechance* were Filipino; in *MacPhail,* the plaintiff was Australian. In *MacPhail,* the forum selection clause was part of a post-injury settlement. In *Marinechance,* the forum selection clauses were negotiated by the Filipino government on behalf of the seamen and for their benefit. These cases involved issues of international law and comity. It is unclear how *Boyd,* which concerned a purely domestic dispute, would apply to these cases. But that issue is not before the Court. This is not a case about a foreign seaman working on a foreign vessel for a foreign employer. This case involves an American seaman injured in American waters while working for an American corporation. Therefore, in light of *Boyd,* this Court holds that choice of forum agreements in employment contracts between American seaman and American companies are unenforceable in Jones Act claims. The Agreement between Plaintiff and Defendant designating Louisiana as the appropriate forum is invalid and will not be enforced.

b. *Weighing the Venue Factors under 28 U.S.C. § 1404(a)*

In its Motion to Transfer, Defendant argued that this case should be transferred to the Eastern District of Louisiana because (1) the parties executed a choice of forum agreement designating the Eastern District of Louisiana as the appropriate federal forum for any lawsuits arising out of Plaintiff's employment with Defendant; (2) Plaintiff resides in the Eastern District of Louisiana; (3) the majority of fact witnesses reside in the Eastern District of Louisiana; and (4) witnesses that are not within the control of either party are within the subpoena power of the Eastern District of Louisiana. This Court denied the Motion because the Plaintiff was injured in Texas waters and because the Plaintiff would be prejudiced by the delay inherent in a transfer.

In its Motion for Reconsideration, Defendant submits that this Court erred in weighing the transfer factors. Defendant argues that Plaintiff will not be prejudiced by a transfer and that this delay is not an appropriate reason to deny a transfer motion. Plaintiff responds that Defendant's Motion for Reconsideration is not limited to correcting mistakes of law or fact but is an attempt to have a second bite at the apple.

In its Order, this Court noted that Defendant filed its Motion to Transfer four months after it filed its Answer. Defendant argues that delay is an inappropriate basis on which to deny its Motion to Transfer. In support, Defendant cites 29 cases, virtually all of which are from other federal district courts, in which a transfer was granted despite the passage of more than four months. To the extent this Court's Order implied that four months was a magic cut-off time beyond which no motion to transfer would ever be granted for any reason whatsoever, it was misleading. Four months or longer may be perfectly reasonable in some cases. This is not one of them. This is a Jones Act personal injury case. Had Defendant's Motion to Transfer contained information not easily accessible, or made novel and creative legal arguments, then four months might have been appropriate. But that was not the case.

Defendant argues that reconsideration is appropriate because this Court's reliance on delay conflicts with binding precedent. *In re Horseshoe Entertainment,* 337 F.3d 429 (5th Cir.2003), involved an employment discrimination claim. In overturning an order denying transfer, the Fifth Circuit criticized the district court's use of the

"vague generalities of 'possibility of delay or prejudice' if transfer is granted." *Id.* at 434. The court then proceeded as follows: "We recognize that in rare and special circumstances a factor of 'delay' or 'prejudice' might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence." *Id.* Defendant argues that Plaintiff has failed to establish delay or prejudice by clear and convincing evidence, and questions whether Plaintiff's injuries are severe enough to qualify as "rare and special circumstances."

■ Assuming that Defendant is correct, this case still has sufficient contacts with the Southern District of Texas to warrant retention. In determining whether a venue transfer is warranted, the Court considers the following factors: the availability and convenience of witnesses and parties; the location of pertinent books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum. *See, e.g., Speed,* 246 F.Supp.2d at 672.[2] First, it is undisputed that Plaintiff was injured within this Court's jurisdiction. The city of Freeport is located in Brazoria County, one of the counties over which this Court presides. *See* 28 U.S.C. § 124(b)(1). The location of the alleged wrong is of "primary importance" in this Court's venue determination. *Speed,* 246 F.Supp.2d at 675. Moreover, the citizens of the Galveston Division have a legitimate interest in the safety conditions and seaworthiness of vessels doing business here. *See LeBouef v. Gulf Operators, Inc.,* 20 F.Supp.2d 1057, 1061 (S.D.Tex.1998). Also, the Plaintiff's choice of forum is entitled to deference. *See, e.g., Speed,* 246 F.Supp.2d at 675. Plaintiff was injured here, and it was certainly reasonable for him to file suit here.

Defendant argues that the availability and convenience of the witnesses merits transfer to the Eastern District. However, many of the witnesses whom Defendant plans to call are persons within its employ. The convenience of witnesses who are also employees of a defendant are entitled to less weight, because the defendant can compel their testimony at trial. *See, e.g., Robertson v. M/V CAPE HUNTER,* 979 F.Supp. 1105, 1107 (S.D.Tex.1997). Also, many of the witnesses who are not within Defendant's employ are seamen. As this Court noted in its Order, seamen spend much of their lives on the sea and are often unavailable for trial in any venue. When this happens, the parties must submit their testimony in the form of depositions, which can be done with "equal ease" in any court. *LeBouef,* 20 F.Supp.2d at 1060.

### III.

■ The party moving to transfer bears the burden of showing that transfer is appropriate. *See Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir.1989). Because Defendant has not met this burden and because the forum selection clause is unenforceable, Defendant's Motion for Reconsideration of its Motion to Transfer

---

**2.** In *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), the Supreme Court announced the factors that a district court should consider in considering a *forum non conveniens* motion to dismiss. Defendant cites the *Piper Aircraft* factors in support of its Motion for Reconsideration, but

these factors do not govern a transfer analysis. *See American Dredging Co. v. Miller,* 510 U.S. 443, 449 n. 2, 114 S.Ct. 981, 986 n. 2, 127 L.Ed.2d 285 (1994) ("[T]he federal doctrine of *forum non conveniens* has continuing vitality only in cases where the alternative forum is abroad.").

is **DENIED.** This case will proceed to its firm trial setting of February 14, 2005.

**IT IS SO ORDERED.**